IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMEBASE PTY LTD., <br><br> Plaintiff, <br><br> vs. <br><br> THE THOMSON CORPORATION, <br><br> Defendant. | **Civil No. 07-460** <br> **Judge Lindberg** <br> **Magistrate Judge Cole** |

**DEFENDANT THE THOMSON CORPORATION'S MOTION
TO TRANSFER VENUE TO THE DISTRICT OF MINNESOTA
AND FOR A MORE DEFINITE STATEMENT**

**INTRODUCTION**

This is a patent infringement lawsuit brought by an *Australian* company against a defendant that develops, operates, and markets its products and systems out of its headquarters in Eagan, Minnesota. This action has no material connection to the Northern District of Illinois. Under 28 U.S.C. § 1404(a) and the well-established venue-transfer analysis of this district—particularly as applied to patent infringement lawsuits—the Court should transfer this case to the District of Minnesota.

Consistently over the last four decades, courts in this district have applied section 1404(a) to transfer patent infringement lawsuits to the judicial district "as close as possible to **the milieu of the infringing device** and **the hub of activity centering around its production**." *S.C. Johnson & Son, Inc., v. Gillette Co.*, 571 F. Supp. 1185, 1188 (N.D. Ill. 1983) (emphasis added) (quoting *AMP Inc. v. Burndy of Midwest, Inc.*, 340 F. Supp. 21, 24-25 (N.D. Ill. 1971)). Thus, in

1

"patent infringement cases, the location of the infringer's principal place of business is often the critical and controlling consideration." *Cooper Bauck Corp. v. Dolby Labs., Inc.*, No. 05-7063, 2006 WL 1735282 at *5 (N.D. Ill. June 19, 2006) (Exhibit A).

Before the court here is a lawsuit with a set of surrounding facts as strong, or stronger, than any of the decades-long line of precedent cases transferring venue under section § 1404(a).

Neither Timebase nor Thomson has any substantial connection to the Northern District of Illinois. The product apparently accused of infringing U.S. Pat. No. 6,233,592, West Publishing Corp. and West Services, Inc.'s (collectively, "West") "PastStat Locator," has almost no material connection to the Northern District of Illinois. The accused product, which is sold nationally by West,[1] was developed, tested, and manufactured in Minnesota. Minnesota is the site of essentially all of West's relevant activities and facilities as well as the home of practically every witness—including important non-party witnesses formerly employed by West—who could offer testimony about the design, development, and marketing of the product.

Accordingly, under the transfer principles consistently applied by this Court, this case should be transferred to the milieu of the infringing device and the hub of activity centering around its production: the District of Minnesota.

**FACTUAL BACKGROUND**

Plaintiff's complaint in this case does not identify an accused product, but, during the parties' pre-suit discussions, Timebase identified West's PastStat Locator, which is a feature on

---

[1] Timebase named "The Thomson Corporation" as the defendant in this lawsuit. The proper defendants should be "West Publishing Corporation" and "West Services, Inc." as they are responsible for Westlaw and Westlaw related products, including the PastStat Locator product. (Martens Decl. ¶2.) The Thomson Corporation will address this deficiency following an order on this motion.

Westlaw.com, as the product that allegedly infringes the '592 patent.[2] West developed and operates the Westlaw legal research service, and PastStat Locator is a feature within the Westlaw architecture. (Martens Decl. ¶¶3, 5.) Timebase is an Australian company, with no known office or employees in the United States, let alone the Northern District of Illinois. The only apparent reason that Timebase filed in this District is that its counsel is located here.[3]

However, the facts of this transfer motion show that the most appropriate forum for this litigation is, by far, the District of Minnesota:

*1. Development of the Accused Product Occurred in Minnesota.* All research, design, development, testing, and creation of source code and specifications occurred at West's Eagan, Minnesota headquarters. (Martens Decl. ¶8.)

*2. Design/Development Documents Are in Minnesota.* The research, design, development, testing, source code, and specification documents are located at West's Eagan, Minnesota headquarters. (Martens Decl. ¶13.)

*3. Hardware Related to the Accused Product Is in Minnesota.* The computers, databases, and central hardware and software for the accused product are located at West's Eagan, Minnesota headquarters. (Martens Decl. ¶11.)

---

[2] Because the Complaint fails to identify an accused product, The Thomson Corporation moves in the alternative for a more definite statement *infra*, should this Court not grant the transfer motion.

[3] As the Seventh Circuit, and district courts across the country have recognized, convenience of counsel is not a factor to be considered in a § 1404(a) transfer analysis. *E.g.*, *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) ("[N]or does § 1404(a) provide that the convenience of counsel is a factor to be considered."); *Genden v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 621 F. Supp. 780, 782 (N.D. Ill 1985) ("Moreover, the convenience of counsel is not one of the factors to be considered under Section 1404(a).").

*4. Marketing of the Accused Product Originates in Minnesota.* The creation of marketing materials, sales training, and strategic marketing decisions occur at West's Eagan, Minnesota headquarters, and all such documents are in Minnesota. (Martens Decl. ¶12.)

*5. Thomson Witnesses Are in Minnesota.* Most importantly, Thomson's witnesses are located at West's Eagan, Minnesota headquarters. The declaration of Andrew Martens identifies at least 18 West witnesses who were and are involved in the development or marketing of PastStat Locator and further includes a specific explanation of each witness's involvement and expected testimony. (Martens Decl. ¶14-17.)

*6. Three Important Non-Party Witnesses Are in Minnesota.* Furthermore, three important witnesses who live in Minnesota are no longer employed by West and cannot be compelled to testify in the Northern District of Illinois—Erv Barbre, Wendy Marko, and Margaret Wanstall. (Martens Decl. ¶16.)

*7. Timebase Has No Witnesses in the United States.* As for plaintiff Timebase, it is an Australian company. (Compl. ¶2.) Thus, its witnesses will have to travel to the United States for this case, and it matters little whether they book flights to Minneapolis or Chicago.

*8. The Inventors and Prosecutor Are Not in Illinois.* Finally, the only other witnesses who may be relevant at this point—the inventors and the attorney who prosecuted the '592 patent—are not located in Illinois. As the face of the '592 patent shows, the inventors are from New South Wales, Australia. And the prosecutor of the '592 patent, Clifford W. Browning, is located in Indianapolis, Indiana.[4]

Accordingly, **not one witness is located in the Northern District of Illinois**, whereas all (except for one) of Thomson's witnesses are located in Minnesota, three non-party witnesses are

---

[4] (*See* http://www.kriegdevault.com/Bio/CliffordBrowning.asp (last visited 2/7/06).)

located in Minnesota, all relevant Thomson documents and hardware are located in Minnesota, all relevant design, development, and marketing documents for the accused product are located in Minnesota, and all business decisions concerning the accused product are centralized in Minnesota.

## ARGUMENT

### The Legal Standard

Under section 1404(a), a district court may exercise its discretion to transfer any civil action to another district court where the action may have been brought. 28 U.S.C. § 1404(a). Transfer is appropriate: (1) if venue is proper in both the transferor and transferee courts, and if the transfer is in both (2) the private interest ("for the convenience of the parties and the witnesses") and (3) the public interest ("the interest of justice"). *See Cooper Bauck Corp. v. Dolby Labs., Inc.*, No. 05-7063, 2006 WL 1735282 (N.D. Ill. June 19, 2006) (Exhibit A).

In patent infringement cases, courts in this District have repeatedly applied these factors to transfer the case to the district that is "the milieu of the infringing device and the hub of activity centering around its production." *S.C. Johnson & Son, Inc., v. Gillette Co.*, 571 F. Supp. 1185, 1188 (N.D. Ill. 1983). Accordingly, "the location of the infringer's principal place of business is often the critical and controlling consideration." *Cooper Bauck Corp.*, 2006 WL 1735282 at *5 (Exhibit A) (quoting *Technical Concepts L.P. v. Zurn Indus., Inc.*, No. 02-5150, 2002 WL 31433408 at *3 (N.D. Ill. Oct. 31, 2002)(Exhibit B)).

1. **Venue is Proper in Both Districts.**

Under 28 U.S.C. § 1400(b), venue in a patent action exists concurrently with personal jurisdiction. Thomson does not dispute for purposes of this motion that venue and personal jurisdiction are proper in both this district and the District of Minnesota.

2. **The 'Private Interest" Test, as Consistently Applied in
   <u>Patent Infringement Cases in This District, Compels Transfer.</u>**

The "private interest" test of section 1404(a) looks to "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative access to sources of proof in each forum including the courts' power to compel the appearance of unwilling witnesses and the costs of obtaining the attendance of witnesses; and (4) convenience to the parties, their residences, and their abilities to bear expense of trial in a particular forum." *E.g., Brunswick Bowling v. Quibica USA, Inc.*, No. 05-3603, 2005 WL 2367764 at *2 (N.D. Ill. Sept. 26, 2005) (Lindberg, J.)(Exhibit C).

In *patent infringement* cases, however, these four private interest factors are *not* created equal, or even close to it, as is clear from the long line of cases in this district. Rather, the second and third factors— "the controlling situs" and "access to proof" factors—dominate the analysis. *See Cooper Bauck Corp.*, 2006 WL 1735282 at *5 (collecting cases) (Exhibit A); *Berol Corp. v. Bic Corp.*, No. 02-559, 2002 WL 1466829 at *4 (N.D. Ill. July 8, 2002)(Exhibit D). These two factors are sometimes weighed together in a search for the "center of gravity" of a particular patent infringement lawsuit. Federal district courts across the country have adopted this "center of gravity" approach to the transfer question in patent infringement cases. *See, e.g., Sorensen v. Daimler Chrysler AG*, 2003 WL 1888866 at *3 (N.D. Cal. Apr. 11, 2003); *Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002) ("In patent infringement cases, the 'preferred forum is that which is the center of gravity of the accused activity.'" (citation omitted)); *Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 609 (E.D. La. 2000); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999); *S.C. Johnson*, 571 F. Supp. at 1187-88. In support, many "center of gravity" courts cite this district's 1983 decision in *S.C. Johnson*, 571 F. Supp. at 1188, which held that the "trier of

fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production."

  *a. The Situs or Center of Gravity of Material Events Is Minnesota.* In order to apply the "situs" test, which is the second private interest factor, courts in this district focus "on the location of the allegedly infringing sales or the alleged infringer's place of business." *Berol*, 2002 WL 1466829 at *4 (Exhibit D) (citing *Energaire Corp. vs. E.S. Originals, Inc.*, No. 99-3252, 1999 WL 1018039 (N.D. Ill. Nov. 2, 1999)(Exhibit F)). Where, as here, "the accused product is sold nationwide," *id.*, (*see* Martens Decl. ¶¶3, 5) the location of product sales becomes a nonfactor and courts instead focus exclusively on the "situs" of the infringing product's design and manufacture as the "critical and controlling consideration" in the venue analysis:

> [I]n patent infringement cases, the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents rather than upon those of the plaintiff.

*Cooper Bauck Corp.*, 2006 WL 1735282 at *5 (Exhibit A) (quoting *Technical Concepts*, 2002 WL 31433408 at *3 (Exhibit B); *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott L.P.*, 807 F. Supp. 470, 474 (N.D. Ill. 1992); *Energaire Corp.*, 1999 WL 101839 at *3 (Exhibit F).)

  Here, Minnesota is the principal—indeed the only—place of relevant business conduct. The Thomson entity involved, West, has its worldwide headquarters in Eagan, Minnesota. (Martens Decl. ¶¶2, 6.) The allegedly infringing product in this case—West's PastStat Locator—operates out of Minnesota. (*Id.* ¶¶5, 8-12.) West developed and tested this product in Minnesota, and the commercial versions of it are maintained and offered from databases and servers located in Minnesota. (*Id.* ¶¶8, 10-11.) Although sales occur throughout the United States, key sales and marketing decisions are made in Minnesota. (*Id.* ¶12.) Indeed, nearly all of

West's high level business decisions originate from its headquarters in Minnesota. (*Id.* ¶17.) Thus, the situs of material events is Minnesota.

    *b. Access to Sources of Proof Is in Minnesota.* Thomson has access to all its proof in Minnesota, and no party, not even Timebase, has evidence in Illinois. All of Thomson's "engineering records or other documents . . . that disclose the technical operation of the accused infringing technology," *Cooper Bauck Corp.*, 2006 WL 1735282 at *5 (Exhibit A), including design and testing documents, are located at West's Minnesota headquarters. (Martens Decl ¶13.) In addition, the computers, central hardware, and software that form the backbone of the data services provided by Westlaw and PastStat Locator are located and operated in Minnesota. (*Id.* ¶11.) Timebase, on the other hand, is headquartered in Australia. (Compl. ¶2.) It has no known office or employees in the United States. Further, presumably all its documents are in Australia, which is also where the inventors are located. Thus, as a "number of courts have recognized . . . practicality and convenience are best served when a patent case is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business *so as to facilitate the production and investigation of books, records and other data necessary to the discovery* and trial techniques employed in the patent field." *Technical Concepts*, 2002 WL 31433408 at *3 (emphasis added) (citations and quotations omitted) (Exhibit B). In light of these facts, the third private interest factor, "relative access to sources of proof in each forum," supports transfer to Minnesota.

    *c. Minnesota Is Most Convenient to Almost All Non-Party and Thomson Witnesses, and Illinois Is Convenient to No Witness.* This Court has joined other courts in this district in focusing on the convenience of witnesses and especially "the location and convenience of potential *non-party* witnesses." *Brunswick Bowling*, 2005 WL 2367764 at *3 (Lindberg, J.)

(emphasis added) (Exhibit C).  In so doing, the Court has looked to "the nature and quality of [these] witnesses' testimony" and has declined to consider "the convenience of unidentified witnesses." *Id.* (quoting *Law Bulletin Publ'g Co. v. LRP Publ'g, Inc.*, 992 F. Supp. 1014, 1018 (N.D. Ill. 1998)).

Here, Thomson can and has specifically identified former employees who will be providing testimony on crucial aspects of the technical development and marketing of the allegedly infringing product.  (Martens Decl. ¶16; *see also* ¶14.)  As outlined in the Declaration of Andrew Martens, Erv Barbre and Wendy Marco, both non-party witnesses, are especially important to the infringement and damages issues in this case as they were involved in business decisions during the launch of the accused product and were involved in basic technical work on the product.  (*Id.*)  The landscape with respect to third party witnesses is just one more reason why the "center of gravity" of this patent infringement lawsuit is located in Minnesota.  Moreover, Thomson has also identified and specifically explained the expected testimony of over 15 other important technical and marketing witnesses located in Minnesota.  (*Id.* ¶14.)  On the other hand, Timebase is headquartered in Australia.  It has no known office or employees in the United States.  The inventors are in Australia.  And the prosecutor of the '592 patent is not even in Illinois.

  *d. Plaintiff's Choice of Forum Has Minimal Value Under These Facts.*  As explained above, the general rule is that the action "ought to be as close as possible to the milleu of the infringing device and the hub of activity centered around its production."  *AMP Inc.*, 340 F. Supp. at 24-25; *S.C. Johnson & Son*, 571 F. Supp at 1187-88 ("As a general rule, the preferred forum is that which is the center of the accused activity.").  And courts in this district, like many

9

others, were declaring as much in clear terms in the 1970s and 1980s. *See Id.*; *AMP Inc.*, 340 F. Supp. at 24-25.

This "general rule" is not disturbed by Timebase's choice of forum, the first prong of the private interest test. Timebase is an *Australian* company that has chosen an Illinois forum. Both patent and non-patent cases alike in this district are clear that, "**when . . . the plaintiff does not reside in the chosen forum and the conduct and events giving rise to the cause of action did not take place in the selected forum, then the plaintiff's preference has nominal value**." *Houck v. TWA, Inc.*, 947 F. Supp. 373, 375 (N.D. Ill. 1996) (emphasis added); *accord Technical Concepts*, 2002 WL 31433408 at *3 ("Generally, a plaintiff's choice of forum is given substantial weight where it is *the plaintiff's home forum*." (emphasis added)) (Exhibit B). Indeed, as a resident of a foreign country, Timebase's forum selection is due even *less* deference. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.2d 665 (2d Cir. 2003) (*forum non-convenience* analysis) (citing *Piper Aircraft Co. v Reyno*, 454 U.S. 235, 255-256, 102 S. Ct. 252 (1981)).

e. *Illinois Is Not Convenient for Any Party*. Nor can Timebase argue, under the fourth prong of the "private interest" analysis, that the current forum is more convenient or economical for the parties and witnesses as a whole. Timebase will have to travel to the United States regardless of forum. *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 484 (D. N.J. 1993) ("Ricoh is still a Japanese corporation located in Japan. Its witnesses are already inconvenienced by having to travel thousands of miles from their homes to testify. Minnesota is no more inconvenient for these witnesses than New Jersey."). Indeed, Australia resident Timebase is hard-pressed to argue that this forum is meaningfully more convenient or economical for *anyone* in the case. *See Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 130 (S.D.N.Y. 2003) (explaining that foreign plaintiff's argument in a patent case that New York "provides a convenient hub for

witnesses traveling from Europe, and is convenient for Pergo because its lawyers are located in New York are simply not relevant factors to consider in weighing the convenience to the parties") (citing *Bionx Implants, Inc. v. Biomet, Inc.*, No. 99-740, 1999 WL 342306 at *3 (S.D.N.Y. May 27, 1999) (Exhibit G) (finding no additional inconvenience from having foreign witnesses take additional flights within the United States from New York to transferee district)); *Genden*, 621 F. Supp. at 782 (N.D. Ill 1985) ("Moreover, the convenience of counsel is not one of the factors to be considered under Section 1404(a).").

In sum, the Minnesota forum is favored by the major private interest factors that have always driven this district's analysis in patent infringement cases. Even among the lesser private interest factors, Timebase can establish virtually no points in its favor. Accordingly, under the "private interest" inquiry under section 1404(a), this Court should transfer this case to the District of Minnesota.

### 3.     The "Public Interest" Test Supports Transfer.

The same facts driving the "private interest" analysis weigh heavily in favor of Minnesota on the "public interest" analysis under section 1404(a) as well. In this district the "public interest" analysis recognizes primarily the desirability of resolving controversies in their locale, and it looks as well at familiarity with law and docket congestion of the transferor and transferee courts. *See Brunswick Bowling*, 2005 WL 2367764 at *5-6 (Exhibit C).

*a. Minnesota Is the Locale with the Most Interest.* "Resolving litigated controversies in their locale is a desirable goal of the federal courts." *Dodge v. Bd. of Regents*, 950 F. Supp. 258, 262 (N.D. Ill. 1997). The "private interest" analysis, above, has established beyond dispute that the locale of the controversy is Minnesota. While sales of the PastStat Locator product were made in Illinois, Minnesota, and other states across the country with an interest in protecting

their residents from patent infringement, "the research, development, . . . implementation, testing, marketing . . . of the accused infringing technology" occurred overwhelmingly or exclusively in Minnesota, and thus it is the locale of the controversy for purposes of the "private interest" analysis. *Cooper Bauck Corp.*, 2006 WL 1735282 at *7 (Exhibit A); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S.Ct. 839 (1947) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.").

    *b. Docket Congestion is Neutral.*  The relative docket congestion of the transferee and transferor courts imposes no impediment to a transfer here.  Courts typically look to the Federal Court Management Statistics to evaluate the speed at which a case will proceed to trial. (http://www.uscourts.gov/fcmstat/index.html).  (Drown Decl. Ex. 1.)  The two most relevant statistics are (1) the median months from filing to disposition and (2) the median months from filing to trial.

    In 2005, the median time from filing to disposition was 7.5 months in the District of Minnesota and 6.9 months in the Northern District of Illinois.  (*Id.*)  In 2005, the median time from filing to trial was 23 months in the District of Minnesota and 27 months in the Northern District of Illinois.  (*Id.*)

    In 2006, the median time from filing to disposition in the District of Minnesota increased to 23.8 months, but this was a statistical aberration caused by the terminations of a large number of cases from other districts that came to Minnesota in the Baycol multidistrict litigation.  (*Id.* Ex. 2.)  The aberration of the 2006 number in the District of Minnesota is borne out by the five year historical data that places the filing to disposition number in the 6 or 7 month timeframe. (*Id.* Ex. 1.)  The median time from filing to disposition in the Northern District of Illinois was 6.5

months in 2006. (*Id.*) In 2006, the median time from filing to trial was 26.4 months in both the District of Minnesota and the Northern District of Illinois. (*Id.*)

  *c. Minnesota and Illinois Are Equally Capable Courts.* The two federal district courts relevant to this motion are each among the top districts in the country for adjudication of patent infringement cases. While this court is obviously experienced in resolving complex patent litigation disputes, the District of Minnesota (the home of 3M and the cardiac rhythm management divisions of the three major U.S. heart device manufacturers) has evidenced comparable patent expertise and indeed has adopted special Local Rule procedures for the management of patent infringement cases. D. Minn. L.R. 16.2, Form 4.

  In sum, the "private interest" analysis fully supports transferring this case to the District of Minnesota, and the "public interest" analysis does nothing to disturb that conclusion.

**Timebase's Complaint Must Identify the Allegedly Infringing Products**

  In the alternative, pursuant to F.R.C.P. 12(e), Thomson seeks an order compelling Timebase to amend its complaint to include a more definite statement confirming the identity of the products accused of infringement.[5] Timebase asserts infringement of the '592 patent but fails to identify a single accused product in its Complaint. To comply with the Federal Rules, a plaintiff must identify in its complaint the products accused of patent infringement. *See, e.g.*, *Bay Indus., Inc. v. Tru-Arx Mfg., LLC*, No. 06-1010, 2006 WL 3469599 (E.D. Wis. Nov. 29, 2006) (citing cases) (Exhibit H); *Agilent Tech., Inc. v. Micromuse, Inc.*, No. 04-3090, 2004 WL 2346152 at *5-6 (S.D.N.Y. Oct. 19, 2004) (Exhibit I) (holding the allegation that defendant "makes, sells, or offers products for sale in this district that infringe [plaintiff's] patents" does

---

[5] As stated *supra*, Thomson believes the accused product is "PastStat Locator," but it seeks confirmation of this fact.

not suffice; Rule 12(e) motion granted). "Assuming plaintiff has properly investigated his claim before filing suit, there is no reason not to inform the defendant precisely which products are at issue," and that will provide a boundary for discovery. *Bay Indus.*, 2006 WL 3469599 at *2 (Exhibit H).

## CONCLUSION

For all of the factual reasons set forth above and in the accompanying materials, and under the longstanding and oft-invoked law of this district, the District of Minnesota is the only appropriate forum for this lawsuit and the instant motion by Thomson to transfer this case there should be granted.

Dated: February 9, 2007

**KIRKLAND & ELLIS LLP**

By:

*s/ Barry F. Irwin*
Barry F. Irwin, P.C. #6211213
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Fax: (312) 861-2200

FAEGRE & BENSON LLP
David J.F. Gross, (*pro hac vice* pending)
Calvin L. Litsey, (*pro hac vice* pending)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Fax: (612) 766-1600

**ATTORNEYS FOR THE THOMSON CORPORATION**

fb.us.1813465.20