# EXHIBIT A

Dockets.Justia.com

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2006 WL 1735282 (N.D.Ill.)
**(Cite as: 2006 WL 1735282 (N.D.Ill.))**

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
COOPER BAUCK CORP., Plaintiff,
v.
DOLBY LABORATORIES, INC., Denon Electronics (USA), LLC, and ABT Electronics,
Inc., Defendants.
No. 05 C 7063.

June 19, 2006.

Joseph Eben Cwik, Avrum Sidney Katz, James A. Scheer, Jon P. Christensen, Walter J. Kawula, Jr., Welsh & Katz, Ltd., Chicago, IL, for Plaintiff.

Andrew Leibnitz, John L. Cooper, Lucas W. Huizar, Farella Braun & Martel LLP, San Francisco, CA, Gregory Michael Smith, John Sheldon Letchinger, Wildman, Harrold, Allen & Dixon, Bradley J. Hulbert, George I. Lee, Jennifer M. Kurcz, Marcia M.E. Ireland, McDonnell Boehnen Hulbert & Berghoff, LLP, James Perry Muraff, Bradley F. Rademaker, Wallenstein Wagner & Rockey, Ltd., Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*
GUZMAN, J.

**\*1** This matter comes before the Court on Defendants' Dolby Laboratories, Inc. ("Dolby"), Denon Electronics (USA), LLC ("Denon"), and Abt Electronics, Inc. ("Abt") motion to transfer venue to the Northern District of California pursuant to 28 U.S.C. § 1404(a). For the reasons set forth herein, the Court grants defendants' motion.

*FACTS*
On December 15, 2003, Plaintiff Cooper Bauck Corp. ("Cooper Bauck") sued Dolby, Denon, and Abt for infringing U.S. Patent No. 4,893,342 and U.S. Patent No. 5,034,983, both assigned to Cooper Bauck, by manufacturing, using, selling or offering to sell audio processing products embodying claimed elements to customers in the United States. (Compl.¶¶ 9-10.) More specifically, Dolby developed and licensed the accused infringing technology to various entities including Denon. (Dolby's Br. Supp. Mot. Transfer, Ex. A, Biber Decl. ¶¶ 3, 6.) Denon, a consumer electronics manufacturer, then allegedly incorporated the accused technology into its devices, selling thousands of units throughout the United States. (*Id.*, Ex. B, Baker Decl. ¶¶ 4, 7-8.) Through the end of 2005, Denon had sold to Abt over one hundred of these devices. (*Id.* ¶ 9.) Located at a single facility in Illinois, and doing business via a website through which it sells consumer electronics and major appliances, Abt then sold eleven of these devices to customers located in Illinois, Wisconsin, California, New Jersey, and Massachusetts from its headquarters in Illinois. (*Id.*, Ex. C, Peterson Decl. ¶¶ 8-9, 14-15.) The quantity sold to customers in Illinois is unknown. Abt sold four of these devices to customers located in the Northern District of California. (Dolby's Reply Br. Supp. Mot. Transfer, Ex. D, Peterson Decl. ¶ 11.)

Cooper Bauck is an Illinois corporation with its principal place of business in Tempe, Arizona. (Compl.¶ 1.) Dolby is a Delaware corporation with its principal place of business in San Francisco, California; Denon is a New Jersey corporation with its principal place of business in Pine Brook, New Jersey; and, Abt is an Illinois corporation with its principal place of business in Glenview, Illinois. (*Id.* ¶¶ 2-4.)

*DISCUSSION*
Pursuant to 28 U.S.C. § 1404(a), a federal district court may "for the convenience of the parties and witness and in the interest of justice ... transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986). It is appropriate for a district court to transfer venue only where "(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witness as well as the interest of justice." *United*

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1735282 (N.D.Ill.)
**(Cite as: 2006 WL 1735282 (N.D.Ill.))**

Page 2

*Air Lines, Inc. v. Mesa Airlines, Inc.* 8 F.Supp.2d 796, 798 (N.D.Ill.1998). Because determining whether to transfer venue "involves a large degree of subtlety and latitude," and is made on a case-by-case basis, it is "committed to the sound discretion of the trial judge." *Coffey,* 796 F.2d at 219; *see Amoco Oil Co. v. Mobil Oil Corp.,* 90 F.Supp.2d 958, 959 (N.D.Ill.2000).

**\*2** In patent cases, venue is governed by 28 U.S.C. § 1400(b), which provides: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). For purposes of 28 U.S.C. § 1400(b), a nonresident corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U .S.C. § 1391(c); *see VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1583-84 (Fed.Cir.1990).

I. Venue Is Proper in the Northern District of Illinois

The parties do not dispute that the Northern District of Illinois is a proper venue. [FN1] Defendants merely argue that the case should be transferred to the Northern District of California based on convenience and the interest of justice. Thus, the Court finds that venue is proper in this district as to all defendants.

> FN1. Because defendants have moved to transfer venue before moving to dismiss for lack of personal jurisdiction or asserting lack of personal jurisdiction as an affirmative defense in their answers to the complaint, they have waived their objection to personal jurisdiction in this district. *See, e.g., Berol Corp. v. BIC Corp.,* No. 02 C 559, 2002 WL 1466829, at \* 1 (N.D.Ill. July 8, 2002); *United States v. B.R. MacKay & Sons, Inc.,* No. 85 C 6925, 1986 WL 13717, at \*6 (N.D.Ill. Nov.28, 1986).

II. Jurisdiction and Venue Would Be Proper in the Northern District of California

Because venue in a patent action against corporate defendants exists wherever there is personal jurisdiction over those defendants, no separate venue inquiry is necessary. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.,* 395 F.3d 1275, 1280 (Fed.Cir.2005). Whether personal jurisdiction exists in the Northern District of California over alleged out-of-state patent infringers is an issue to be determined by precedent of the Federal Circuit, rather than that of the Ninth Circuit. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564-65 (Fed.Cir.1994).

A district court may exercise personal jurisdiction over an out-of-state defendant when (1) the forum state's long-arm statute allows service of process and (2) the assertion of personal jurisdiction would not violate due process. *Inamed Corp. v. Kumak,* 249 F.3d 1356, 1359 (Fed.Cir.2001). "[B]ecause California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Id.* at 1360; *see* Cal.Civ.Proc.Code § 410.10 (West 2005).

Jurisdiction comports with due process if a defendant has sufficient minimum contacts with the forum. *Inamed,* 249 F.3d at 1360. To determine whether minimum contacts exist, the court asks whether "the defendant 'has purposefully directed his activities at residents of the forum' " (referred to as general jurisdiction) or whether " 'the litigation results from alleged injuries that arise out of or relate to those activities" ' (referred to as specific jurisdiction). *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The concept of minimum contacts "protects the defendant against the burdens of litigating in a distant or inconvenient forum" and "acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). However, even if minimum contacts exist, the court must then determine whether assertion of personal jurisdiction is constitutionally reasonable, *i.e.,* whether litigating in the particular forum would offend " 'traditional notions of fair play and substantial justice." ' *Id.* (quoting *Int'l Shoe Co. v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1735282 (N.D.Ill.)
(Cite as: 2006 WL 1735282 (N.D.Ill.))

*Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

**\*3** As a preliminary matter, Cooper Bauck concedes that a court in the Northern District of California may properly exercise personal jurisdiction as to Dolby. (Cooper Bauck's Br. Opp'n Mot. Transfer 2; Dolby's Br. Supp. Mot. Transfer, Ex. A, Biber Decl. ¶ 2.) Therefore, the remainder of the personal jurisdiction analysis focuses on Denon and Abt.

**A. General Jurisdiction**

A court may exercise general personal jurisdiction where a defendant has "continuous and systematic" contacts with the forum state even though the cause of action has no relation to those contacts. *Helicopteros Nacionalaes de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *LSI Indus. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed.Cir.2000).

In the instant case, Denon, which is not a resident of California, conducts yearly sales visits to dozens of distributors and dealers in the Northern District of California that sell Denon products incorporating the accused infringing technology. (Dolby's Reply Br. Supp. Mot. Transfer, Ex. E, Baker Decl. ¶ 5.) Furthermore, Denon continually solicits business from these dealers throughout each year. (*Id.*) The Court holds that through Denon's sales and solicitation of sales, it has had continuous and systematic contacts with California.

As for Abt, it has purposefully reached out to consumers within the Northern District of California by directing hundreds of promotional emails to actual and potential customers within that district. (*Id.,* Ex. D, Peterson Decl. ¶ 8.) Through its website, Abt generated millions of dollars in revenue in each of the years 2004 and 2005 from sales made to the Northern District of California. (*Id.* ¶¶ 7-8.) This is sufficient to establish Abt's continuous and systematic contacts with California.

**B. Specific Jurisdiction**

Patent infringement occurs when a party "without authority makes, uses, offers to sell or sells any paten-

ted invention." 35 U.S.C. § 271(a). Thus, a state can assert specific jurisdiction over a defendant only if the defendant commits one of these acts in that state. *HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1308 (Fed.Cir.1999).

In the past three years, Denon has sold nearly one thousand units incorporating the accused infringing technology to distributors and dealers in the Northern District of California. (Dolby's Reply Br. Supp. Mot. Transfer, Ex. E, Baker Decl. ¶¶ 1-4.) Abt has sold at least four Denon products incorporating the accused infringing technology to customers in the Northern District of California, generating approximately $3,500.00 in revenue. (*Id.,* Ex. D, Peterson Decl. ¶ 11.) Therefore, Denon and Abt are also subject to personal jurisdiction in the Northern District of California because they have sold products in that district that give rise and directly relate to Cooper Bauck's cause of action.

**C. Constitutional Reasonableness**

Whether the exercise of jurisdiction is constitutionally reasonable depends on several factors: "(1) the burden on the defendant, (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Inamed,* 249 F.3d at 1363. "[C]ases where a defendant may defeat otherwise constitutional personal jurisdiction should be 'limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." ' *Id.* (quoting *Akro Corp. v. Luker,* 45 F.3d 1541, 1549 (Fed.Cir.1995)).

**\*4** In this case, because the burden on Dolby, Denon and Abt is slight, California has a keen interest in the litigation in order to determine whether products being sold to its residents infringe Cooper Bauck's patent, Cooper Bauck has an interest in obtaining relief, and the resolution of the controversy in California will efficiently serve the interests of justice (as dis-

Not Reported in F.Supp.2d                                                                                 Page 4
Not Reported in F.Supp.2d, 2006 WL 1735282 (N.D.Ill.)
**(Cite as: 2006 WL 1735282 (N.D.Ill.))**

cussed below), the Court holds that litigating in the Northern District of California does not offend traditional notions of fair play and substantial justice. In light of defendants' marketing, licensing, and sale of the accused infringing technology or products that incorporate that technology in the Northern District of California, they could reasonably anticipate being haled into court there. In sum, defendants have sufficient minimum contacts with the Northern District of California such that exercise of personal jurisdiction over them comports with due process.

III. Transfer Will Serve Convenience of Parties and Witnesses and Interests of Justice

On a motion to transfer venue, the party seeking transfer "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient" than the transferor forum. *Coffey*, 796 F.2d at 219-20. When making a transfer determination, the court considers both the private interest of the parties and the public interest of the court. *Medi USA v. Jobst Inst., Inc.*, 791 F.Supp. 208, 210 (N.D.Ill.1992).

A. Private Interest Factors

Factors for the court to consider in assessing private interests include: (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses. *Amoco Oil*, 90 F.Supp.2d at 960. The Court addresses the factors in turn.

1. Plaintiff's Choice of Forum and Situs of Material Events

Generally, a plaintiff's choice of forum is provided substantial weight. *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir.1982); *Amoco Oil*, 90 F.Supp.2d at 960; *United Air Lines*, 8 F.Supp.2d at 798. However, deference to the plaintiff's choice of forum should be minimized where it is not the situs of material events. *R.E. Davis Chem. Corp. v. Int'l Crystal Labs., Inc.*, No. 03 C 7288, 2004 WL 2191328, at *5 (N.D.Ill. Sept.27, 2004); *Coleman v. Buchheit, Inc.*, No. 03 C 7495, 2004 WL 609369, at *1 (N.D.Ill. Mar.22, 2004). When a plaintiff's choice of forum has "relat-

ively weak connections with the operative facts giving rise to the claim," it is afforded less importance and becomes only one of many factors to be considered by the court. *Von Holdt*, 887 F.Supp. at 188; *see Amoco Oil*, 90 F.Supp.2d at 961; *Technical Concepts L.P. v. Zurn Indus., Inc.*, No. 02 C 5150, 2002 WL 31433408, at *3 (N.D.Ill. Oct.31, 2002); *Berol*, 2002 WL 1466829, at *4.

Here, because Abt's sale of eleven devices incorporating the accused infringing technology creates only a minimal connection with Cooper Bauck's choice of this forum, it is necessary to compare the connections of each district with the operative facts giving rise to Cooper Bauck's claim. Cooper Bauck contends that its claim is sufficiently connected to the Northern District of Illinois because Cooper Bauck is an Illinois corporation, has a registered agent in this district, licenses intellectual property from its attorneys' offices located in this district, stores relevant documents in this district, maintains financial accounts in the Central District of Illinois, has a corporate officer residing in the Central District of Illinois, and the inventions at-issue were conceived, reduced to practice, and patented in Illinois. (Cooper Bauck's Br. Opp'n Mot. Transfer 7.)

**\*5** While these facts establish some connection to this district, the alleged infringement goes far beyond Abt's eleven sales from the Northern District of Illinois, and "sales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 Supp.2d 871, 874 (N.D.Ill.1999); *see Berol*, 2002 WL 1466829, at *4. Here, at least 22,000 units incorporating the accused infringing technology have been sold nationwide. The nature of Cooper Bauck's business operations in the Northern District of Illinois and Abt's sale of eleven products incorporating the accused infringing technology from this district, at best, establish a minimal connection between this district and the pertinent facts giving rise to this cause of action.

Dolby, Denon and Abt argue that the Northern District of California is the situs of material events because the research, development, patenting, implementation, testing, marketing, and licensing of the ac-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 5
Not Reported in F.Supp.2d, 2006 WL 1735282 (N.D.Ill.)
**(Cite as: 2006 WL 1735282 (N.D.Ill.))**

cused infringing technology all occurred there.
(Dolby's Br. Supp. Mot. Transfer 4.) Furthermore,
Dolby's principal place of business is in the Northern
District of California (Compl.¶ 2); Dolby licenses the
accused infringing technology to more licensees in
the Northern District of California than any other dis-
trict (Dolby's Reply Br. Supp. Mot. Transfer, Ex. F,
Biber Decl. ¶ 3); Denon has sold to electronic retail-
ers within the Northern District of California
products that incorporate the accused infringing tech-
nology (Dolby's Br. Supp. Mot. Transfer, Ex. B,
Baker Decl. ¶ 10); and Abt has also sold to con-
sumers within the Northern District of California at
least four Denon products that incorporate the ac-
cused technology (Dolby's Reply Br. Supp. Mot.
Transfer, Ex. D, Peterson Decl. ¶ 11). Such factors
are given significant weight because in patent in-
fringement cases, " 'the location of the infringer's
principal place of business is often the critical and
controlling consideration' because such suits 'often
focus on the activities of the alleged infringer, its em-
ployees, and its documents,' rather than upon those of
the plaintiff[ ]." *Technical Concepts, 2002 WL
31433408, at *3* (quoting *Habitat Wallpaper &
Blinds, Inc. v. K.T. Scott L.P., 807 F.Supp. 470, 474
(N.D.Ill.1992)); Energaire Corp. v. E.S. Originals,
Inc., No. 99 C 3252, 1999 WL 1018039, at *3
(N.D.Ill. Nov.2, 1999).*

In sum, Cooper Bauck has chosen a forum with a
rather weak connection to defendants' actions giving
rise to the claim, which results in the factor weighing
ever so slightly against transfer. Because the situs of
material events lies predominantly in the Northern
District of California, this factor weighs heavily in fa-
vor of transfer.

2. Ease and Access to Sources of Proof

Cooper Bauck asserts that access to sources of proof
is easier in this district than in the Northern District
of California because its and Abt's documents are
located here and because this district is centrally loc-
ated amongst licensees of Dolby's accused infringing
technology, from whom Cooper Bauck will presum-
ably subpoena documents. (Cooper Bauck's Br.
Opp'n Mot. Transfer 8-9.) However, Dolby maintains
that the comparative bulk of relevant documents

resides in the Northern District of California, and that
Dolby's listening facilities and physical equipment,
which Cooper Bauck has requested to inspect, cannot
conveniently or logistically be moved to Illinois.
(Dolby Reply Br. Supp. Mot. Trans. 9-10.) Neither
Denon or Abt has engineering records or other docu-
ments in its possession, custody, or control that dis-
close the technical operation of the accused in-
fringing technology. (*See* Def.'s Mot. Transfer, Ex. B,
Baker Decl. ¶ 6.)

**\*6** Here again, because this is a patent case, more fo-
cus is placed on the location of defendant's activities,
employees, and facilities. *Technical Concepts, 2002
WL 31433408, at *3.* As for relevant records and
documents, there is no doubt that "all relevant docu-
ments will be collected, copied, inspected and sent to
the office of trial counsel" regardless of the venue.
*Sch. Stuff, Inc. v. Sch. Stuff, Inc., No. 00 C 5593,
2001 WL 558050, at *5 (N.D.Ill. May 21, 2001).*
Thus, because virtually all of the relevant non-
documentary evidence resides almost wholly in the
Northern District of California, this factor weighs in
favor of transfer.

3. Convenience of the Parties

This factor concerns the "residence of the parties and
their ability to bear the expense of trial in a particular
forum." *Medi USA, 791 F.Supp. at 210.* Cooper
Bauck maintains that this is the more convenient ven-
ue for all the parties because neither Abt nor Denon
expressly state that the Northern District of California
is a more convenient forum and because it would be
more cost prohibitive for the smaller Cooper Bauck,
rather than Dolby, to litigate this case outside its
home forum. (Cooper Bauck's Br. Opp'n Mot. Trans-
fer 11.) In contrast, Dolby argues that its home forum
in the Northern District of California is the most con-
venient venue for all parties because Cooper Bauck's
principal place of business is in Arizona. (Dolby
Reply Br. Supp. Mot. Trans. 11.) Here, because at
least one of the parties will be inconvenienced re-
gardless of the forum, this factor is neutral. *See I.P.
Innovation, L.L.C. v. Lexmark Int'l, Inc., 289
F.Supp.2d 952, 955 (N.D.Ill.2003)* ("[A] motion to
transfer cannot be used simply to shift the one party's
inconvenience onto another party.").

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1735282 (N.D.Ill.)
**(Cite as: 2006 WL 1735282 (N.D.Ill.))**

Page 6

4. Convenience of the Witnesses

The convenience of the witnesses is often the most important factor in the venue transfer analysis. *R.E. Davis,* 2004 WL 2191328, at *6. When considering this factor, the number of witnesses located in each district and the importance of their testimony should be considered. *Medi USA,* 791 F.Supp. at 210. Additionally, the court may consider whether the witnesses can be compelled to testify. *Id.* at 211. The party seeking the transfer must specify the key witnesses to be called and make a generalized statement of what their testimony would include. *Technical Concepts,* 2002 WL 31433408, at *4.

Cooper Bauck has identified one company, Motorola Inc., headquartered in this district, from which Cooper Bauck intends to call a potential third-party witness. (Cooper Bauck's Br. Opp'n Mot. Transfer 11.) Cooper Bauck alleges that Motorola has sold products incorporating the accused infringing technology, and therefore Cooper Bauck intends to seek records and subpoena a witness from Motorola on relevant issues. (*Id.* at 12.) However, Motorola has since disassociated itself from Freescale Semiconductor, Inc., the former Motorola division that sold such products that is now a separate entity located in Texas. (Dolby's Reply Br. Supp. Mot. Transfer 9.) Dolby has identified seven companies that are licensees of the accused infringing technology located within the subpoena power of the Northern District of California and whose employees will be called as third-party witnesses to testify as to how each of the companies used such technology. (Dolby Reply Br. Supp. Mot. Transfer, Ex. F, Biber Decl. ¶ 2.) Thus, no third-party witnesses reside in this district, and the only third-party witnesses that have been identified reside in Texas or the Northern District of California. Accordingly, this factor favors transfer.

B. Public Interest Factors

**\*7** Public interest factors, or interests of justice, "relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *Von Holdt v. Husky Injecting Molding Sys. Ltd.,* 887 F.Supp. 185, 188 (N.D.Ill.1995).

1. Court's Familiarity with the Law

Patent infringement is a question of federal law. This Court and the Northern District of California are "equally well-equipped to accommodate patent infringement cases." *See Berol,* 2002 WL 1466829, at *6. Thus, this factor weighs neither in favor of nor against transfer.

2. Congestion of Respective Dockets

When considering this issue, the two most relevant statistics are the median months from filing to disposition and the median months from filing to trial. *Amoco Oil,* 90 F.Supp.2d at 962. In the Northern District of Illinois, the median time from filing to disposition is 5.8 months and from filing to trial is 24.7 months. ADMINISTRATIVE OFFICE OF U.S. COURTS, 2005 ANNUAL REPORT OF THE DIRECTOR 188-90 tbl. C-5 (2005), *available at* http://www.uscourts.gov/judbus2005/appendices/c5.pdf. In the Northern District of California, the median time from filing to disposition is 6.4 months and from filing to trial is 26.0 months. *Id.* In addition, Dolby argues that a recent five-year, empirical analysis of patent enforcement in the district courts shows that 71% of patent cases in the Northern District of California reach resolution prior to any significant court action, while only 53% of such cases are resolved early in the Northern District of Illinois. Kimberly A. Moore, *Forum Shopping in Patent Cases: Does Geographic Choice Affect Innovation?,* 79 N.C. L. REV. 889, 912 tbl. 5 (2001).

The Court finds the difference between the congestion of the respective courts' dockets is relatively minimal (in favor of this district) and the empirical study on patent enforcement shows that more cases are resolved earlier in the proceedings in the Northern District of California than in the Northern District of Illinois. Thus, this factor weighs neither in favor of nor against transfer.

3. Desirability of Resolving Controversies in Their Locale

"Resolving litigated controversies in their locale is a desirable goal of the federal courts." *Doage v. Bd. of Regents,* 950 F.Supp. 258, 262 (N.D.Ill.1997). The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1735282 (N.D.Ill.)
(Cite as: 2006 WL 1735282 (N.D.Ill.))

Page 7

controversy in patent infringement actions typically centers on where the defendant's activities occurred. *Technical Concepts,* 2002 WL 31433408, at *7. Where an accused product is distributed and sold throughout the United States, "several states ... share [an] interest in redressing the alleged infringement." *Id.*

In this case, it has been established that much of the alleged activities that allegedly infringed Cooper Bauck's patent occurred in the Northern District of California, including the research, development, patenting, implementation, testing, marketing and licensing of the accused infringing technology, as well as sale of products that incorporated the accused infringing technology. While Illinois has an interest in protecting those within the state from patent infringement and in preventing infringers from operating within its boundaries, because the alleged infringing technology was sold in several states, including California, California shares Illinois' interests. As such, this factor weighs in favor of transfer to the Northern District of California.

*8 In sum, the situs of material events, the ease and access to sources of proof, the convenience of public witnesses, and the desirability of resolving the controversy in its locale all heavily favor transferring venue. All other factors (except for plaintiff's choice of forum, which weighs slightly against transfer) remain neutral. As such, the Court finds transferring this case to the Northern District of California is appropriate.

### CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a). This case is hereby transferred to the U.S. District Court for the Northern District of California.

SO ORDERED

Not Reported in F.Supp.2d, 2006 WL 1735282 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 1773450 (Trial Motion, Memorandum and Affidavit) Cooper Bauck's Memorandum in Op-

position to Dolby's Motion to Compel Claim Charts Complying with the Court's Scheduling Order (May 31, 2006)Original Image of this Document (PDF)

• 2006 WL 1403209 (Trial Motion, Memorandum and Affidavit) Plaintiff Cooper Bauck Corp.'s Reply in Support of its Objections to Magistrate Shenkter's Report and Recommendation of March 30, 2006 (Apr. 18, 2006)Original Image of this Document (PDF)

• 2006 WL 1438382 (Trial Motion, Memorandum and Affidavit) Dolby's, Denon's, and ABT's Joint Opposition to Cooper Bauck's Objections to Protective Order Entered March 30, 2006 (Apr. 13, 2006)Original Image of this Document (PDF)

• 2006 WL 1438380 (Trial Motion, Memorandum and Affidavit) Plaintiff Cooper Bauck Corp.'s Objections to Magistrate Shenkier's Report and Recommendation of March 30, 2006 (Apr. 6, 2006)Original Image of this Document (PDF)

• 2006 WL 1006741 (Trial Motion, Memorandum and Affidavit) Defendant Dolby Laboratories, Inc.'s Opposition to Plaintiff Cooper Bauck Corporation's Motion for Protective Order (Mar. 24, 2006)Original Image of this Document (PDF)

• 2006 WL 1039187 (Trial Motion, Memorandum and Affidavit) Defendant Dolby Laboratories, Inc.'s Opposition to Plaintiff Cooper Bauck Corporation's Motion for Protective Order (Mar. 24, 2006)Original Image of this Document (PDF)

• 2006 WL 1006740 (Trial Motion, Memorandum and Affidavit) Plaintiff Cooper Bauck Corp.'s Motion for Entry of A Protective Order (Mar. 10, 2006)Original Image of this Document (PDF)

• 2006 WL 1039186 (Trial Motion, Memorandum and Affidavit) Defendant Dolby Laboratories, Inc.'s Redacted Reply Brief in Support of Motion to Transfer Venue (Mar. 3, 2006)Original Image of this Document (PDF)

• 2006 WL 741541 (Trial Pleading) Defendant Abt Electronics, Ind.'s Answer to Plaintiff's Complaint (Feb. 9, 2006)Original Image of this Document

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1735282 (N.D.Ill.)
(Cite as: 2006 WL 1735282 (N.D.Ill.))

(PDF)

• 2006 WL 740986 (Trial Motion, Memorandum and Affidavit) Cooper Bauck's Memorandum in Opposition to the Defendants' Motion to Transfer Venue (Feb. 8, 2006)Original Image of this Document (PDF)

• 2006 WL 741540 (Trial Pleading) Denon Electronics (USA), LLC's Answer to Complaint (Feb. 8, 2006)Original Image of this Document (PDF)

• 2006 WL 428049 (Trial Motion, Memorandum and Affidavit) Defendant Dolby Laboratories, Inc.'s Brief in Support of Motion to Transfer Venue (Jan. 9, 2006)Original Image of this Document (PDF)

• 2006 WL 428561 (Trial Pleading) Dolby Laboratories, Inc.'s Answer to Complaint (Jan. 9, 2006)Original Image of this Document (PDF)

• 1:05cv07063 (Docket) (Dec. 15, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)
**(Cite as: 2002 WL 31433408 (N.D.Ill.))**

**H**

<u>**Motions, Pleadings and Filings**</u>

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
TECHNICAL CONCEPTS L.P., an Illinois Limited
Partnership, Plaintiff,
v.
ZURN INDUSTRIES, INC., a Pennsylvania Corpor-
ation, Defendant.
No. 02 C 5150.

Oct. 31, 2002.

*MEMORANDUM OPINION AND ORDER*
<u>GUZMAN</u>, J.

**\*1** Pending is Defendant Zurn Industries, Inc. motion
to transfer this lawsuit pursuant to <u>28 U.S.C. §
1404(a)</u>. For the reasons set forth below this motion
is granted.

*BACKGROUND FACTS*
Plaintiff Technical Concepts L.P. ("Technical") is an
Illinois partnership having its principal place of busi-
ness in Mundelein, Illinois (Compl. P 1). Technical
manufactures and distributes automatic flush valve
actuators, and holds a patent for its actuator under
<u>U.S. Patent No. 5,680,879 ("the '879 patent")</u> (*Id.* P
2). Defendant Zurn Industries, Inc. ("Zurn") is a cor-
poration organized and existing under the laws of
Pennsylvania, with its principle place of business in
Erie, Pennsylvania 16514 (*Id.* P 1). Zurn holds a pat-
ent under <u>U.S. Patent No. 5,431,181 ("the '181 pat-
ent")</u> for its own actuator (*See Answer,* Ex. A
(License Agreement), P 1).

Technical and Zurn are parties to a License and Sup-
ply Agreement ("License Agreement") dated March
5, 1999 and a Modification of License and Supply
Agreement dated October 6, 2000 ("Modification
Agreement") (together, "the Agreements") (Answer,
Exhibits A-B). Within these two related agreements,
the two companies cross-licensed patents to one an-

other. Zurn licensed Technical under its <u>'181 patent</u>,
and Technical licensed Zurn under its <u>'879 patent</u>
(*Answer,* Ex. A).

Section 8.2 of the License agreement states "[i]f
either party is in breach of this Agreement, the
breaching party cannot sue the other for patent in-
fringement." ((Answer, Ex. A) (License Agreement),
P 7). The License Agreement further provides
"[n]otice of breach by either party shall be given by
providing sixty (60) days written notice to the other
party of said breach." *Id.* Lastly, it states "[a]ny
breach may be cured with thirty (30) days," and if a
party fails to correct a breach, the other party "has the
option of terminating this Agreement." *Id.*

On March 12, 2002, Zurn provided written notice to
Technical, alleging that Technical had committed nu-
merous breaches of the Agreements (*Def. Br. Mot.
Trans.,* P. 3). On March 25, 2002, Technical filed a
complaint against Zurn in the Northern District of
Illinois seeking a declaratory judgment that it did not
infringe Zurn's <u>'181 patent</u>. *Id.* The case was assigned
Case No. C 2136 and assigned to Judge Castillo, who
dismissed this complaint for failure to properly allege
jurisdiction and venue. *Id.* On April 19, 2002, Tech-
nical filed another complaint again seeking a declara-
tion that it did not infringe Zurn's <u>'181 patent</u>, under
which it was still licensed. *Id.* This complaint was
again assigned to Judge Castillo, and was given Case.
No. 02 C 2827. On April 26, 2002, Judge Castillo
again dismissed this complaint without prejudice. *Id.*
Technical filed a motion to reconsider the April 26th
dismissal, and on September 9, 2002, Judge Castillo
granted Technical's motion to reconsider. *Technical
Concepts, L.P. v. Zurn Industries, Inc.,* 2002 U.S.
Dist. LEXIS 16925 (N.D.Ill. Sept. 10, 2002).
However, Judge Castillo transferred the case to the
Western District of Pennsylvania *sua sponte* under <u>28
U.S.C. 1404(a)</u>, stating that the "pleadings and issues
in this case indicates that venue is more appropriate"
in the transferee district. *Id.* at \*6.

**\*2** On May 14, 2002, Zurn filed a patent infringe-
ment suit in the United States District Court for the
Western District of Pennsylvania at Civil Action No.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)
(Cite as: 2002 WL 31433408 (N.D.Ill.))

02-159-Erie, alleging that Technical had infringed its '181 patent (*Def. Br. Mot. Trans.,* P 4). This action is still pending. On July 19, 2002, Technical filed the instant lawsuit against Zurn, alleging the infringement of the '879 patent. On August 21, 2002, Zurn filed a motion to transfer under 28 U.S.C. § 1404(a) this case to the Western District of Pennsylvania. The motion to transfer is granted.

## DISCUSSION

A motion to transfer is governed by 28 U.S.C. § 1404(a). Under 1404(a), a federal district court may "for the convenience of the parties and witnesses and in the interest of justice ... transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Coffee v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986). A section 1404(a) transfer is appropriate only where "(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." *United Air Lines, Inc. v. Mesa Airlines, Inc.,* 8 F.Supp.2d 796, 798 (N.D.Ill.1998). Because determining whether transfer is appropriate "involves a large degree of subtlety and latitude," and is made on a case-by-case basis, it is therefore "committed to the sound discretion of the trial judge." *Coffee,* 796 F.2d at 219; *Amoco Oil Co. v. Mobil Oil Corp.,* 90 F.Supp.2d 958, 959 (N.D.Ill.2000).

To aid the trial judge in determining the final element of the 1404(a) analysis, the party seeking to transfer venue "has the burden of establishing, by reference to particular circumstances, that the transfer forum is clearly more convenient" than the transferor court. *Coffee,* 796 F.2d at 219-20. In making a transfer determination, the court must consider both the private interests of the parties and the public interests of the Court. *Medi USA v. Jobst Inst., Inc.,* 791 F.Supp. 208, 210 (N.D.Ill.1992). Factors for the court to consider in assessing private interests include: (1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses. *Amoco Oil,* 90 F.Supp.2d at 960. Public interest factors or interests

of justice "relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *VonHoldt v. Husky Injecting Molding System Ltd.,* 887 F.Supp. 185, 188 (N.D.Ill.1995). These interests of justice "may be determinative in a particular case, even if the parties and witnesses might call for a different result." *Coffee,* 796 F.2d at 220.

**\*3** Venue in patent infringement actions is controlled by 28 U.S.C. § 1400(b), which provides: "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Zurn, the defendant in this case, resides in the Western District of Pennsylvania. Because venue is proper in both this district, and under 28 U.S.C. § 1400(b), in the Western District of Pennsylvania, the only issues that remain to be decided pertain to the convenience of the parties and witnesses, as well as the interests of justice.

A. Private Factors

i. Plaintiff's Choice of Forum and Site of Material Events

Generally, a plaintiff's choice of forum is given substantial weight where it is the plaintiff's home forum. *United Air Lines,* 8 F.Supp.2d at 798; *Amoco Oil,* 90 F.Supp.2d at 960; *Macedo v. Boeing Co.,* 693 F.2d 683, 688 (7th Cir.1982). However, while the plaintiff's choice is an important consideration, it is not absolute in determining whether a motion to transfer should be granted. *Amoco Oil,* 90 F.Supp.2d at 960. Specifically, where the plaintiff's choice of forum has "relatively weak connections with the operative facts giving rise to the claim," it is afforded less importance and becomes only one of many factors considered by the court. *Von Holdt,* 887 F.Supp. at 188; *Amoco Oil,* 90 F.Supp.2d at 961.

In order to determine the appropriate weight that should be accorded to the plaintiff's choice of forum, it is necessary to consider the site of material events. This claim arises out of the defendant's alleged in-

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)
**(Cite as: 2002 WL 31433408 (N.D.Ill.))**

fringement of the plaintiff's '879 patent. Technical argues that this claim has a strong connection to the Northern District of Illinois because Illinois is its home forum, and that a few named entities within the Illinois have sold and distributed Zurn's allegedly infringing product. However, as Technical has admitted, Zurn's product is also distributed in across the United States, and "sales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Energaire Corp. v. E.S. Originals, Inc.,* 1999 U.S. Dist. LEXIS 17304, at * 7 (N.D.Ill. Oct. 27, 1999), *quoting Anchor Wall Systems, Inc. v. R & D Concrete Prods., Inc.,* 55 F.Supp.2d 871, 874 (N.D.Ill.1999); *Pl. Opp. to Def. Mot.,* P 6.; *see also Berol Corp. v. BIC Corp.,* 2002 U.S. Dist. LEXIS 12932, at *14 (N.D.Ill. Jul. 3, 2002). Thus, the fact that a few entities in Illinois sell the allegedly infringing product does not establish a particularly strong connection between Illinois and this cause of action.

Conversely, not only is Zurn a Pennsylvania corporation with its principal place of business in that district, the cause of action also primarily arose in Pennsylvania. The License Agreements between parties, through which the '879 patent was originally licensed to Zurn, was negotiated, prepared and completed in the Western District of Pennsylvania. The laws of Pennsylvania govern the Agreements. Further, the allegedly infringing products were designed in Pennsylvania and Mr. Harrinder Singh, one of the developers of the original Zurn product resides in Erie Pennsylvania. These factors are due considerable weight because in infringement cases, "the location of the infringer's principle place of business is often the critical and controlling consideration" because such suits "often focus on the activities of the alleged infringer, its employees, and its documents" rather than upon those of the plaintiffs. *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott L.P.,* 807 F.Supp. 470, 474 (N.D.Ill.1992); *Energaire,* 1999 U.S. Dist. LEXIS 17304, at *8.

**\*4** This cause of action did not arise in Illinois. Pennsylvania is the primary site of material events. Accordingly, because Technical has chosen a forum that has a tenuous connection to the claim, its choice of forum is afforded reduced valuein the Court's ana-

lysis. Thus, these two factors favor the transfer to Pennsylvania.

**ii. Relative Ease of Access to Evidence and Convenience of the Parties**

The Court next considers "the residence of the parties and their ability to bear the expense of trial in a particular forum." *Medi USA,* 791 F.Supp. at 210. While both parties raised the issue of transporting documents, the ability or inability of either party to bring relevant documents to court that are not already located within the district "neither militates for or against transfer." *Hanley v. Omarc, Inc.,* 6 F.Supp.2d 770, 775 (N.D.Ill.1998). Also relevant to this consideration is the fact that the instant case is patent case. As already stated, in infringement cases, more focus is placed upon the defendants' activities, documents, and employees. *Habitat,* 807 F.Supp. at 474 (N.D.Ill.1992). Thus, "[a] number of courts have recognized that 'practicality and convenience are best served when a patent case is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business so as to facilitate the production and investigation of books, records and other date necessary to the discovery and trial techniques employed in the patent field." ' *Ardco, Inc. v. Page, Ricker, Felson Marketing, Inc.,* 1992 U.S. Dist. LEXIS 14299, at *16-*17, 25 U.S.P.Q.2d (BNA) 1382, 1386 (N.D.Ill.1992), *quoting Spound v. Action Industries, Inc.,* 369 F.Supp. 1066, 1069 (N.D.Ill.1974). As discussed before, the allegedly infringing product was designed in Pennsylvania, and Zurn has a regular and establish place of business there. A further relevant consideration to the convenience element is the fact that the related '181 patent litigation between these two parties is already pending in Pennsylvania, and, thus, Technical already must travel to Pennsylvania to defend itself. *See Berol,* 2002 U.S. Dist. LEXIS 12932, at *17. Together, these factors weigh in favor of transfer.

**iii. The Convenience of Witnesses**

The identification of "potential, non-party witnesses who will be inconvenienced in having to travel to another forum to provide testimony" in an action is rel-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)
(Cite as: 2002 WL 31433408 (N.D.Ill.))

evant to determining which venue is most convenient for the witnesses. *Amoco Oil,* 90 F.Supp.2d at 961. This consideration is "often viewed as the most important factor in the transfer balance." *Hanley,* 6 F.Supp.2d at 775. In making this assessment, the number of witnesses located in each forum and the importance of their testimony must be considered. *Medi USA,* 791 F.Supp. at 210. The party seeking a transfer must "clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989). Less weight is assigned to the location of employee-witnesses because they would presumably voluntarily appear to defend the suit. *Hanley,* 6 F.Supp.2d at 775.

**\*5** Zurn claims that its primary witnesses who will testify on Zurn's design, manufacture and sale of the allegedly infringing products are Zurn employees who are located in Pennsylvania. In its original motion to transfer, Zurn only specifically listed Robert Saadi and Alex Marini, the president of Zurn, as "key witnesses," and provided a declaration by Mr. Saadi that he and Mr. Marini personally negotiated the terms of the License Agreements, and that both he and Mr. Marini live in Erie, Pennsylvania. Mr. Saadi also stated that Zurn has no witnesses within the state of Illinois. In its reply, Zurn additionally listed Michael Vieyra, another Zurn employee, as a witness. Zurn also named two non-party, non-employee witnesses: Mr. Harinder Singh, who is one of the named developers of Zurn's '181 patent and lives in Erie, Pennsylvania, and Mr. Brian Creager, a former Zurn employee who is another named inventor of the '181 patent who now lives in Atlanta, Georgia.

Technical also provided the names of witnesses it planned to call during trial. Technical plans to offer the testimony of Mr. Vince McNeill to establish the non-obviousness of the patented invention, Mr. George Murphy to establish the lack of any non-infringing substitutes, and Mr. David York to testify as to Technical's lost profits. All three are all employees of Technical and reside in the Northern District of Illinois. Technical also listed two non-party witnesses, Mr. Kenneth Murderlak, and inventor of the '879 patent who resides in Milwaukee and Sherwood,

Wisconsin and Mr. Hsieh, another named inventor of the '879 patent who resides in Taiwan. According to Technical, Mr. Murderlak will testify as to how the patented device was conceived and how it operates and functions in relation to Technical's patented device.

Each party specifically listed three employee witnesses, which are given less weight. Each party also specifically listed two non-employee witnesses, all of whom are inventors of the patents at issue between the two parties. Thus, the issue of convenience of the each side respective witnesses is neutral.

**iv. Convenience of the parties**

In evaluating the convenience of the litigants, the court considers their residences and their ability to bear the expenses of litigating in a particular forum. *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.,* 42 F.Supp.2d 821, 833 (N.D.Ill.1999). "Transfer is inappropriate if it 'merely transforms an inconvenience for one party into an inconvenience for the other party.' ' *Id.* quoting *Chemical waste Mgmt. v. Sims,* 870 F.Supp. 870, 876 (N.D.Ill.1994). In light of the ongoing litigation taking place in Pennsylvania this factor weighs in favor of Zurn.

**B. Public Factors/Interests of Justice**

The interests of justice component of the 1404(a) analysis concerns the "efficient administration of the court system," *Coffey,* 796 F.2d at 221, embracing "traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *TIG Ins. Co. v. Brightly Galvanized Products, Inc.,* 911 F.Supp. 344, 346 (N.D.Ill.1996).

**i. Court's Familiarity with Applicable Law**

**\*6** Patent infringement is a question of federal law, and is one that both this court and the Western District of Pennsylvania are both equally competent to hear and decide upon. Pennsylvania law is also implicated in this case in that it governs the License Agreements. However, while the Pennsylvania court is more familiar with its own substantive laws, courts often decide substantive legal questions based on another state's laws. *Amoco Oil,* 90 F.Supp.2d at 962.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)

(Cite as: 2002 WL 31433408 (N.D.Ill.))

Further, where the law in question is neither complex nor unsettled, the interests of justice remain neutral between competing courts. *Bodine's, Inc. v. Sunny-O, Inc.,* 494 F.Supp. 1279, 1286-87 (N.D.Ill.1980). Thus, this issue neither weighs in favor or against the transfer.

### ii. Speed at Which the Case will Proceed to Trial

Technical and Zurn cite different statistics as to the speed at which the case will proceed to trial in each respective district. To determine the relative speed, the court looks to the Federal Court Management Statistics for "(1) the median months from filing to disposition and (2) the median months from filing to trial." *Amoco Oil,* 90 F.Supp.2d at 962. According to the 2001 Annual Report of the Director (Leonidas Ralph Mecham) on Judicial Business of the United States Courts, which is the most recent report, the median months from filing to disposition (where there is no court action) in the Western District of Pennsylvania is 8.1, and the median in the Northern District of Illinois is 5.1 months. *See* Table C-5, U.S. District Courts: Median Time Intervals from Filing to Disposition of Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2001, *available at* http://www.uscourts.gov/judbus2001/contents.html. The median time from filing to trial in Pennsylvania is 27.0 months, and in Illinois it is 25.4 months. *Id.* Because there is a slightly higher backlog in Pennsylvania, this factor weighs against transfer.

### iii. Presence of Related Litigation

Another relevant consideration in the interests of justice is the presence of related litigation. *Black & Decker Corp. v. Vermont Am. Corp.,* 915 F.Supp. 933, 939 (N.D.Ill.1995), *citing Wysnoski v. Millet,* 758 F.Supp. 439, 445 (N.D.Ill.1991). Generally, in order to achieve "efficient administration of justice," cases "should be transferred to the district where related actions are pending." *Carus Corp v. Greater Texas Finishing Corp.,* 1992 U.S. Dist. LEXIS 908, at *4-*5 (N.D. Ill. Jan. 31 1992). Specifically, "[w]hen pending litigation involves the same parties and similar legal, technical and infringement issues, transfer to that venue is logical and strongly favored."

*Berol,* 2002 U.S. Dist. LEXIS 12932, at *17 n. 5, *citing Magnavox Co. v. APF Electronics, Inc.,* 496 F.Supp. 29 (N.D.Ill.1980). The '879 patent case and the '181 case that is currently pending in the Western District of Illinois involve the same parties, the patents were cross-licensed in the same License Agreements, and the same technical and infringement issues are implicated because both patents apply to parts of the same product, the flush valve actuator. Technical has answered the Pennsylvania complaint and not sought transfer to Illinois. This factor weighs in favor of transfer because both of these actions involve issues relating to the cross-license agreement.

### iv. Relation of the Community to the Occurrence and the Desirability of Resolving Controversies in their Locale

**\*7** "Resolving litigated controversies in their locale is a desirable goal of the federal courts." *Doage v. Board of Regents,* 950 F.Supp. 258, 262 (N.D.Ill.1997). Technical argues that the Northern District of Illinois has an interest in protecting its citizens from infringement and preventing infringers from operating within its boundaries. While this is true, it is also true that the accused product is distributed and sold throughout the United States. Thus, several states, including Pennsylvania, presumably share Illinois' interest in redressing the alleged infringement. Further, because infringement actions are usually associated with the defendant's activities, which in this case are concentrated in Pennsylvania, these combined factor favors transfer to Pennsylvania. *See Berol,* 2002 U.S. Dist. LEXUS 12932, at *18; *Energaire,* 1999 U.S. Dist. LEXIS 17304, at *14.

### CONCLUSION

Zurn's motion to transfer venue[# 5-1] to the Western District of Pennsylvania with respect to Technical's action against Zurn is granted pursuant to 28 U.S.C. § 1404(a), and orders the Clerk of the Court to transfer this case to the Western District of Pennsylvania and close this case in this District.

SO ORDERED

Not Reported in F.Supp.2d, 2002 WL 31433408

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31433408 (N.D.Ill.)
**(Cite as: 2002 WL 31433408 (N.D.Ill.))**

(N.D.Ill.)

**Motions, Pleadings and Filings** <u>(Back to top)</u>

• <u>2002 WL 32675551</u> (Trial Pleading) Answer to Counterclaim (Oct. 2, 2002)Original Image of this Document (PDF)

• <u>2002 WL 32675547</u> (Trial Motion, Memorandum and Affidavit) Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Transfer (Sep. 19, 2002)Original Image of this Document with Appendix (PDF)

• <u>2002 WL 32675544</u> (Trial Pleading) Answer, Affirmative Defenses and Counterclaims (Aug. 12, 2002)Original Image of this Document with Appendix (PDF)

• <u>2002 WL 32675539</u> (Trial Pleading) Complaint for Patent Infringement (Jul. 19, 2002)Original Image of this Document with Appendix (PDF)

• <u>1:02CV05150</u> (Docket) (Jul. 19, 2002)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

## Westlaw.

Not Reported in F.Supp.2d                                              Page 1
Not Reported in F.Supp.2d, 2005 WL 2367764 (N.D.Ill.)
**(Cite as: 2005 WL 2367764 (N.D.Ill.))**

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
BRUNSWICK BOWLING and Billiards Corporation
Plaintiff,
v.
QUBICA USA, INC., Defendant.
**No. 05 C 3603.**

Sept. 26, 2005.
Jason C. White, Trevor K. Copeland, Brinks, Hofer, Gilson & Lione, Chicago, IL, for Plaintiff.

Patrick Francis Solon, David Joseph Mahalek, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL, for Defendant.

MEMORANDUM AND ORDER
LINDBERG, Senior J.

**\*1** Brunswick Bowling and Billiards Corporation ("plaintiff"), brought this action against Qubica USA, Inc. ("defendant") for alleged patent infringement. Defendant has filed a motion to transfer venue to the Middle District of Florida pursuant to 18 U.S.C. § 1404(a). Defendant's motion is hereby granted.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "A transfer under § 1404(a) is appropriate if: (1) venue is proper in both the transferor and transferee courts; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc., 992 F.Supp. 1014, 1017 (N.D.Ill.1998). "It is in the sound discretion of the trial judge to determine the weight accorded to each factor." Amoco Oil Co. v. Mobil Oil Corp., 90 F.Supp.2d 958, 959 (N.D.Ill.2000).

Plaintiff has been involved in the bowling industry

since the late nineteenth century and is currently the world leader in the manufacture and sale of bowling equipment. It is headquartered in Lake Forest, Illinois, and has approximately 791 employees in Illinois. Defendant is a Florida corporation engaged in the business of developing and selling innovative bowling center products. It conducts its development, manufacturing, sales and distribution activity in Lake Hamilton and Bonita Springs, Florida. Two of the products offered by defendant are the Smile Arch and the Smile Axe scoring stations, used for scoring bowling games.

Defendant has sold the Smile Axe to three bowling alleys, all of which are in Florida, and has sold the Smile Arch to one bowling alley, also in Florida. Last year, defendant sold one scoring system (neither the Smile Axe nor the Smile Arch) to a bowling alley in Illinois. Illinois sales have accounted for less than three percent of defendant's total sales since 1996. On June 20, 2005, plaintiff filed this action in the Northern District of Illinois alleging infringement of two of plaintiff's patents (U.S. Patent Nos. 6,441,724 and 6,619,603) in general terms. The complaint identifies defendant's Smile Axe and Smile Arch products as two infringing products but is broad enough to include other products within a certain class of products that might also infringe.

The first element that is necessary in order for transfer to be proper under 28 U.S.C. § 1404(a) is that venue must be proper in both the transferor and the transferee districts. Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc., 992 F.Supp. 1014, 1017 (N.D.Ill.1998). Plaintiff and defendant agree that venue is proper in both the Northern District of Illinois and in the Middle District of Florida. See 28 U.S.C. § 1391. "Thus, the focal point of this analysis is the convenience of parties and witnesses and the interest of justice, to which this court now turns." Trusery Corp. v. Neff, 6 F.Supp.2d 790, 794 (N.D.Ill.1998).

**\*2** In evaluating a request for transfer, the court must consider both the private interests of the parties and the public interest. Medi USA, L.P. v. Jobst Inst., Inc., 791 F.Supp. 208, 210 (N.D.Ill.1992). Private interest

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2367764 (N.D.Ill.)
(Cite as: 2005 WL 2367764 (N.D.Ill.))

factors include: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof in each forum including the courts' power to compel the appearance of unwilling witnesses and the costs of obtaining the attendance of witnesses; and (4) convenience to the parties, their residences and their abilities to bear the expense of trial in a particular forum. *Trusery Corp. v. Neff*, 6 F.Supp.2d 790, 792 (N.D.Ill.1998) (*citing Medi USA, L.P. v. Jobst Inst., Inc.*, 791 F.Supp. 208, 210 (N.D.Ill.1992)). Public interest factors include: (1) the relation of the community to the issue of the litigation and the desirability of resolving controversies in their locale; (2) the court's familiarity with applicable law; and (3) the congestion of the respective court dockets and the prospects for earlier trial. *Id.*

The parties disagree as to the amount of deference that should be given to the plaintiff's choice of forum. Plaintiff cites several cases for the proposition that its choice of forum is given significant weight when, as here, plaintiff has chosen its home forum. *See IP Innovation L.L.C. v. Matsushita Elec. Indus. Co., Ltd.*, No. 05 C 902, 2005 U.S. Dist. LEXIS 11892, at *4 (N.D.Ill. June 13, 2005); *Sitrick v. Freehand Sys., Inc.*, No. 02 C 1568, 2003 U.S. Dist. LEXIS 4813, at *6-7 (N.D.Ill. Mar. 24, 2003); *Abbott Lab. v. Zenith Lab.*, No. 02 C 1568, 2003 U.S. Dist. LEXIS 3256, at *7 (N.D.Ill. Mar. 25, 1995). Defendant on the other hand cites cases for the proposition that plaintiff's choice of forum should be given deference only when there is a connection between the forum and the operative facts giving rise to the cause of action. *See Trusery Corp. v. Neff*, 6 F.Supp.2d 790, 794 (N.D.Ill.1998); *Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F.Supp. 185, 188 (N.D.Ill.1995). In this case, plaintiff's principal place of business is located in the Northern District of Illinois and plaintiff has nearly 800 employees in the district. There is no other connection to the Northern District of Illinois. It is unnecessary at this time for the court to decide how much deference should be afforded plaintiff's choice of forum. "[W]hile the plaintiff's choice is an important consideration, it is not absolute in determining whether a motion to transfer should be granted." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D.Ill.2000).

Even if plaintiff's choice of forum is given substantial deference, other factors weigh strongly enough in favor of transfer that this court will still grant defendant's motion.

The parties also disagree over what should be considered the situs of material events. Defendant urges that "in infringement cases, the location of the infringer's place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents rather than upon those of the plaintiffs." *Technical Concepts, L.P. v. Zurn Indus., Inc.*, No. 02 C 5150, 2002 U.S. Dist. LEXIS 21020, at *4 (N.D.Ill. Oct. 30, 2002) (internal quotations omitted). Defendant argues that because it is headquartered in the Middle District of Florida, development of the allegedly infringing products occurred in the Middle District of Florida, and the alleged infringement (sale of Defendant's Smile Arch and Smile Axe to bowling alleys) occurred in the Middle District of Florida, the Middle District of Florida is the situs of material events. Plaintiff on the other hand, points out that "the material events of a patent infringement case do not revolve around any particular situs. The trier of fact determines patent infringement by comparing the alleged infringing device with the language of the claims." *Medi USA, L.P. v. Jobst Institute, Inc.*, 791 F.Supp. 208, 210 (N.D.Ill.1992). It is unnecessary for this court to resolve the issue whether the situs of material events is in fact the Middle District of Florida. There is no strong connection in this case to the Northern District of Illinois. This factor is either neutral, or weighs in favor of transfer. Making all possible inferences in favor of plaintiff (that the alleged infringement in the Middle District of Florida does not make that district the situs of material events), transfer is still appropriate given the weight of the other factors.

*3 The ease of access to sources of proof weighs heavily in favor of transfer to the Middle District of Florida. The location of documents does not weigh in favor of either forum as "[t]he court is satisfied ... that either party can easily bring to the district in which the case is litigated" all necessary documents. *Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F.Supp. 1014, 1017 (N.D.Ill.1998). Similarly, the location of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2367764 (N.D.Ill.)
(Cite as: 2005 WL 2367764 (N.D.Ill.))

witnesses who are employees of either defendant or plaintiff is a neutral factor since the convenience of "employee-witnesses ... is generally assigned little weight," *Law Bulletin, 992 F.Supp. at 1019,* and it is assumed that employee witnesses would "voluntarily appear to defend the suit." *Technical Concepts L.P. v. Zurn Indus., Inc.,* No. 02 C 5150, 2002 U.S. dist. LEXIS 21020, at *12 (N.D.Ill. Oct. 30, 2002).

The location and convenience of "potential, non-party witnesses" is often viewed as the "most important factor in the transfer balance." *Technical Concepts L.P. v. Zurn Indus., Inc.,* No. 02 C 5150, 2002 U.S. Dist. LEXIS 21020, at *18 (N.D.Ill. Oct. 30, 2002). The movant has "the burden of showing, by reference to particular circumstances, that the transferee forum is clearly more convenient," *Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-220 (7th Cir.1986),* and "[v]enue may not be transferred simply to shift inconvenience from the defendant to the plaintiff." *Holley Performance Prods, Inc. v. Barry Grant, Inc.,* No. 04 C 5758, 2004 U.S. Dist. LEXIS 25892, at *12 (N.D.Ill.Dec. 17, 2004) (citing *Tsaparikos v. Ford Motor Co., No. 02 C 6899, 2002 WL 31844949, at *1 (N.D.Ill.Dec.18, 2002)*).

"The determination of whether a particular venue is more convenient for the witnesses should not turn on which party produces a longer witness list. Rather, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case." *Law Bulletin Publ's. Co. v. LRP Publ'ns, Inc., 992 F.Supp. 1014, 1018 (N.D.Ill.1998).* Furthermore, the court "will not consider the convenience of ... unidentified witnesses." *Id. at 1018.* Defendant identifies several non-party witnesses and the testimony they will be expected to provide.

Doug Wilkerson, one such witness, assisted in the development of the Qubica products at issue and will testify as to dates of development and first use. While Mr. Wilkerson is currently a Qubica employee, he has provided notice of his resignation. He lives in Winter Haven, Florida. Tony Madafer, a resident of Naples, Florida, is a vendor that was used to fabricate components for Qubica products. He can testify about the development process, dates of development, and specifications of scoring stations. Current

and former employees of Woodside Lanes in Naples, Florida can testify about the sale and use of the Smile Arch stations installed at Woodside Lanes. Defendant claims this testimony will be relevant to its defenses. The owners and employees of the Regal Bowling Lanes in Tampa, Florida, Unity Bowling Lanes in Zephyrhills, Florida and Crown Bowling Lanes in Tampa, Florida can testify about the sale and use of the Smile Axe stations installed in their bowling facilities. Dick Hubbard III, the owner of Sarasota Lanes in Sarasota, Florida, will testify about the sale, design, installation and use of defendant's mounting arms, as well as plaintiff's representatives who visited the center and inspected the tables and mounting systems in early 1999. Defendant also claims that this information is relevant to its defenses. Will Heddon, formerly of Heddon Bowling Corporation (a competitor of both plaintiff and defendant) can provide testimony relevant to patent misuse by plaintiff, dates of first use by defendant and plaintiff, evidence of prior art, and evidence of obviousness.

*4 The convenience of these non-party witnesses weighs strongly in favor of transfer to the Middle District of Florida. Plaintiff argues that the convenience of these witnesses does not mandate transfer because defendant has not proven that these witnesses will not appear voluntarily or that their testimony cannot be provided through videotaped deposition. This argument fails. The court must consider not only whether these witnesses will appear voluntarily, but "whether these witnesses will be subject to compulsory process and the cost to obtain attendance of willing witnesses." *Pinpoint, Inc. v. Amazon.com,* No. 03 C. 4954, 2003 U.S. Dist. LEXIS 16561, at *9 (N.D. Ill. Sept. 18 2003). Furthermore, by making non-party witnesses available for trial, the court hopes "to minimize the risk of trial by deposition." *Aearo Co. v. Bacou-Dalloz USA Safety, Inc.,* No. 03 C 1406, 2004 U.S. Dist. LEXIS 13970, at *8 (N.D.Ind. July 21, 2004) (internal quotations omitted).

Plaintiff also argues that the case must remain in Illinois for the convenience of its own non-party witnesses. However, plaintiff does not identify any non-party witnesses located within the Northern District of Illinois. Instead, plaintiff argues that the Northern District of Illinois is a more convenient forum for the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 2367764 (N.D.Ill.)
**(Cite as: 2005 WL 2367764 (N.D.Ill.))**

inventors of the patents in question, who are located in Michigan and Wisconsin. This argument fails since witnesses who live in neither the transferor nor the transferee forum are insignificant to the court's analysis. *Law Bulletin Publ'g. V. LRP Publ'ns, Inc., 992 F.Supp. 1014, 1019 (N.D.Ill.1998).* While Illinois might be more convenient for residents of Michigan and Wisconsin, the reality is that "these witnesses would be away from their homes and work regardless of whether the trial is held in Florida or Illinois." *Id.*

Defendant has identified a number of expected non-party witnesses who have relevant testimony and who are located in Florida. On the other hand, the only witnesses that plaintiff has identified in the Northern District of Illinois are its President and Chief Financial Officer. The convenience of the witnesses therefore weighs strongly in favor of transferring the case to Florida.

The last private interest factor that the court should consider is the convenience to the parties. *Law Bulletin Publ'g Co. V. LRP Publ'ns, Inc., 992 F.Supp. 1014, 1019 (N.D.Ill.1998).* Specifically, the court should consider their respective residences and their ability to bear the expenses of litigating in a particular forum. *Id.* It will presumably be inconvenient for either party to have to litigate in the other's home forum. Defendant argues that because of the relative size of plaintiff and defendant, plaintiff is in a much better position financially to be able to litigate away from home. Plaintiff points out though, that defendant is not a regional company. Defendant conducts business on an international level and last year had sales in excess of $20 million. Plaintiff on the other hand, had sales in excess of $442 million last year. In *Holley Performance Prods, Inc. v. Barry Grant, Inc.,* the defendant conducted approximately $9.8 million in business while the plaintiff conducted about $140 million in business, during the given year. No. 04 C 5758, 2004 U.S. Dist. LEXIS 25892, at *20 (N.D.Ill.Dec. 17, 2004). In that case, the court states that "[w]hile neither party is destitute, the relative size of the parties favors transfer...." *Id.* The same reasoning applies here. The disparity in the relative size of plaintiff and defendant weighs in favor of transfer, although this factor alone would not man-

date transfer.

**\*5** The third and final consideration is whether "transfer is in the interest of justice," *Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc. ., 992 F.Supp. 1014, 1017 (N.D.Ill.1998).* "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," *Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir.1996),* and the court must look at the public, rather than private, interest factors. *.Medi USA, L.P. v. Jobst Inst., Inc., 791 F.Supp. 208, 210 (N.D.Ill.1992).* The analysis "includes such considerations as the speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale. *Amoco Oil Co. v. Mobil Oil Corp., 90 F.Supp.2d 958, 961 (N.D.Ill.2000)* (*citing H & V Silver Mine, Inc. v. Cohen,* No. 96 C 3550, 1997 U.S. Dist LEXIS 16040, at *5 (N.D.Ill. Oct.6, 1997)). In this case, these factors weigh neither for nor against transfer.

For the purposes of evaluating the speed at which a case will proceed to trial, courts may look to the Federal Court Management Statistics for the transferor and transferee districts. *Amoco Oil Co. V. Mobil Oil Corp., 90 F.Supp.2d 958, 961 (N.D.Ill.2000).* The two most relevant statistics are "(1) the median months from filing to disposition and (2) the median months from filing to trial ." *Id.* The relevant 2004 statistics show that the median time in the Northern District of Illinois from filing to disposition was 5.9 months while the median time from filing to trial was 28.4 months. In the Middle District of Florida the median time from filing to disposition was 8.7 months and the median time from filing to trial was 20.2 months. While the statistics show that cases proceed to trial faster in the Middle District of Florida, cases reach disposition sooner in the Northern District of Illinois. This factor, therefore, weighs neither for or against transfer.

Both districts are equally familiar with the applicable law. "Patent infringement is a question of federal law and both this Court and the [Middle District of Florida] are both equally competent to hear and decide upon such matters." *Sitrick v. Freehand Systems, Inc.,*

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2367764 (N.D.Ill.)
(Cite as: 2005 WL 2367764 (N.D.Ill.))

No 02 C 1568, 2003 U.S. Dist. LEXIS 4813, at *13 (N.D.Ill. Mar. 24, 2003). Thus, this issue weighs neither for nor against transfer.

Finally, "[r]esolving litigated controversies in their locale is a desirable goal of the federal courts." *Sitrick v. Freehand Systems, Inc.,* No. 02 C 1568, 2003 U.S. Dist. LEXIS 4813, at *13 (*citing Doage v. Board of Regents,* 950 F.Supp. 258, 262 (N.D.Ill.1997)). Defendant argues that the Middle District of Florida has a strong interest in deciding the case because of its connection to the material facts of the case and because any injunction that might issue would primarily affect Florida business. Plaintiff does not refute these claims, nor does it argue that Illinois has a strong interest in hearing the case. It is unnecessary at this time to decide whether the Middle District of Florida is indeed the "locale" of the controversy, as defendant's motion will be granted based on the weight of the other factors regardless of whether the Middle District of Florida is the "locale of the controversy."

**\*6** Given that the location and convenience of defendant's non-party witnesses weighs very strongly in favor of transfer to the Middle District of Florida; the convenience for defendant, and the disparity in size between plaintiff and defendant favors transfer; and all other factors are neutral or only favor one party very weakly, transfer to the Middle District of Florida is appropriate for the convenience of the parties and witnesses and in the interest of justice.

ORDERED: Qubica USA, Inc.'s motion to transfer this action to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) is granted. This action is ordered transferred to the Middle District of Florida.

Not Reported in F.Supp.2d, 2005 WL 2367764 (N.D.Ill.)

### Motions, Pleadings and Filings (Back to top)

• 2005 WL 2870531 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply in Support of its Motion to Strike Certain of Defendant's Affirmative Defenses (Sep. 22, 2005)Original Image of this Document (PDF)

• 2005 WL 2870523 (Trial Motion, Memorandum and Affidavit) Defendant Qubica USA, Inc.'s Response to Plaintiff's Motion to Strike Certain of Defendant's Affirmative Defenses (Sep. 14, 2005)Original Image of this Document (PDF)

• 2005 WL 2610827 (Trial Motion, Memorandum and Affidavit) Defendant's Reply to Plaintiff's Opposition to Defendants Motion to Transfer Venue (Aug. 30, 2005)Original Image of this Document (PDF)

• 2005 WL 2610821 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion to Strike Certain of Defendant'S Affirmative Defenses (Aug. 29, 2005)Original Image of this Document (PDF)

• 2005 WL 2610816 (Trial Motion, Memorandum and Affidavit) Plaintiff Brunswick Bowling and Billiards Corporation's Opposition to Qubica's Motion to Transfer Venue (Aug. 24, 2005)Original Image of this Document (PDF)

• 2005 WL 2610810 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Aug. 8, 2005)Original Image of this Document with Appendix (PDF)

• 2005 WL 2610796 (Trial Pleading) Defendant Qubica Usa, Inc.'s Answer and Affirmative Defenses to Complaint (Aug. 5, 2005)Original Image of this Document (PDF)

• 2005 WL 1768483 (Trial Pleading) Brunswick's Complaint and Jury Demand (Jun. 20, 2005)Original Image of this Document with Appendix (PDF)

• 1:05cv03603 (Docket) (Jun. 20, 2005)

END OF DOCUMENT

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d                                                                                     Page 1
Not Reported in F.Supp.2d, 2002 WL 1466829 (N.D.Ill.)
**(Cite as: 2002 WL 1466829 (N.D.Ill.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
BEROL CORP. and Sanford, L.P., Plaintiffs,
v.
BIC CORPORATION and BIC U.S.A., Inc., Defend-
ants.
**No. 02 C 0559.**

July 8, 2002.

Patent holder and its licensee sued sellers of correc-
tion fluid product for patent infringement. One of
sellers moved to transfer venue and to dismiss for
lack of personal jurisdiction. The District Court, Get-
tleman, J., held that: (1) seller waived its objection to
personal jurisdiction by first moving for transfer of
venue; (2) due process permitted exercise of specific
personal jurisdiction over alleged infringer; and (3)
transfer of venue was warranted.

Motion to dismiss denied; motion to transfer granted.

West Headnotes

[1] Federal Courts ☞95
170Bk95 Most Cited Cases
By moving district court for transfer of venue before
moving to dismiss for lack of personal jurisdiction or
asserting lack of personal jurisdiction as affirmative
defense in its answer to complaint, defendant waived
its objection to personal jurisdiction, in that moving
to transfer venue presupposed and conceded jurisdic-
tion in transferor court, even though motion to trans-
fer was filed pursuant to statute rather than rule. 28
U.S.C.A. § 1404(a); Fed.Rules Civ.Proc.Rule
12(b)(2, 3), (g), 28 U.S.C.A.

[2] Constitutional Law ☞305(5)
92k305(5) Most Cited Cases

[2] Patents ☞288(3)
291k288(3) Most Cited Cases

Due process permitted exercise of specific personal
jurisdiction over alleged infringer, pursuant to
Illinois' long-arm statute, in patent infringement ac-
tion, inasmuch as alleged infringer purposefully dir-
ected its activities to Illinois when it transferred ac-
cused product to its affiliate and allowed affiliate to
put product, bearing labels with alleged infringer's
name, into stores to be sold in Illinois, patent in-
fringement claim arose out of or related to alleged in-
fringer's activities in Illinois, and alleged infringer
did not show that personal jurisdiction in forum was
not reasonable and fair. U.S.C.A. Const.Amend. 14;
S.H.A. 735 ILCS 5/2-209.

[3] Federal Courts ☞110
170Bk110 Most Cited Cases
Venue over patent infringement action was proper in
both transferee court in Northern District of Illinois
and transferor court in Southern District of New
York, as required to satisfy first prong of test govern-
ing transfer of venue for convenience of parties, giv-
en that personal jurisdiction existed over alleged in-
fringers both in Illinois and New York, and therefore
alleged infringers "resided" in each forum, making
venue proper under statute governing venue in patent
infringement actions. 28 U.S.C.A. §§ 1391(c),
1400(b), 1404(a).

[4] Federal Courts ☞110
170Bk110 Most Cited Cases
Transfer of venue from Northern District of Illinois
to Southern District of New York for the convenience
of parties was proper in patent infringement action,
given that allegedly infringing product was sold na-
tionwide, defendants were headquartered in Con-
necticut, where most of documents, employees, and
activities related to accused product were located,
most likely witnesses were within New York court's
subpoena power, and Illinois did not have particu-
larly strong interest in redressing alleged infringe-
ment, which allegedly occurred nationwide. 28
U.S.C.A. § 1404(a).

*MEMORANDUM OPINION AND ORDER*
GETTLEMAN, J.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 2
Not Reported in F.Supp.2d, 2002 WL 1466829 (N.D.Ill.)
**(Cite as: 2002 WL 1466829 (N.D.Ill.))**

**\*1** Plaintiffs Berol Corp. and Sanford, L.P. have filed a complaint against defendants BIC Corp. and BIC U.S.A., Inc., alleging that defendants sell a correction fluid product, Wite-Out PlusTM, that infringes plaintiffs' patent for an "Applicator for Correction Fluid," U.S. patent number 6,312,180 ("the '180 patent"). Berol is the assignee and owner of the '180 patent, and Sanford is its exclusive licensee. Defendant BIC Corp. first filed a motion to transfer venue to the Southern District of New York pursuant to 28 U .S.C. § 1404(a), and then two weeks later filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. For the following reasons, the motion to dismiss is denied, and the motion to transfer is granted.

### BACKGROUND

BIC Corp. is a New York corporation with its principal place of business in Milford, Connecticut. BIC USA is a Delaware corporation with its principal place of business also in Milford, Connecticut. Berol Corp. is a Delaware corporation with its principal place of business in Freeport, Illinois and Sanford, L.P. is an Illinois limited partnership with its principal place of business in Bellwood, Illinois.

Shortly after plaintiffs filed their complaint, but before they served it on defendants, defendants filed a declaratory judgment action in the United States District Court for the Southern District of New York seeking a declaration that the '180 patent is invalid and that the Wite-Out PlusTM product does not infringe the '180 patent. Upon learning of the declaratory action, plaintiffs served the defendants with the complaint in this action. Before answering the complaint, BIC Corp. filed a motion to transfer the instant action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Two weeks later, BIC Corp. filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. Approximately two months later, defendants filed and served a third action, also in the Southern District of New York, against plaintiffs for infringement of a patent for "Foam Applicator and Wiper Insert," U.S. patent number 6,238,116 ("the '116 patent").

### DISCUSSION

#### 1. Jurisdiction

[1] BIC Corp. has moved to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). By moving this court for a transfer of venue before moving to dismiss for lack of personal jurisdiction or asserting lack of personal jurisdiction as an affirmative defense in its answer to plaintiffs' complaint, BIC Corp. waived its objection to personal jurisdiction. U.S. v. B.R. MacKay & Sons, Inc., 1986 WL 13717, at \*6 (N.D.Ill. Nov.28, 1986). Because both the transferor and transferee courts must have jurisdiction over a defendant in order to effect a change of venue under § 1404(a), moving to transfer venue presupposes and concedes proper jurisdiction in the transferor court. Id. BIC Corp.'s contention that it preserved its Fed.R.Civ.P. 12(b)(2) defense by moving to transfer venue pursuant to 28 U.S.C. § 1404(a) rather than pursuant to Fed.R.Civ.P. 12(b)(3) is unpersuasive. "A motion to transfer pursuant to Section 1404(a) is analogous to a Rule 12(b)(3) motion to change venue, and for this reason the § 1404(a) motion has been viewed as a Rule 12 motion for purposes of waiver under Rule 12(g)." Id. Under Rule 12(g) all Rule 12 defenses must be consolidated in one motion, and the failure to raise a defense available at the time the initial motion is raised acts as a waiver of the defense under Rule 12(h)(1). Accordingly, the court concludes that BIC Corp. has waived its right to assert that this court lacks personal jurisdiction over it.

#### 2. Venue

**\*2** When ruling on a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), the court considers whether: i) venue is proper in both transferor and transferee courts; ii) transfer is for parties' and witnesses' convenience; and iii) transfer is in the interest of justice. Energaire Corporation v. E.S. Originals, Inc., 1999 WL 1018039, at \*1 (N.D.Ill. Nov.2, 1999) (citing Coffey v. Van Dorn Iron Work, 796 F.2d 217, 219 (7th Cir.1986)). The defendant, as the moving party, must demonstrate that transfer will promote the efficient administration of justice. Id.

Venue in patent infringement actions is controlled by 28 U.S.C. § 1400(b), which provides: "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1466829 (N.D.Ill.)
(Cite as: 2002 WL 1466829 (N.D.Ill.))

the defendant has committed acts of infringement and has a regular and established place of business." *See Energaire,* 1999 WL 1018039 at *1. Under 28 U.S.C. § 1391(c) a corporate defendant resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1578 (Fed.Cir.1990).

It is uncontested that this court has jurisdiction over BIC USA. BIC Corp. has, however, disputed jurisdiction in this court. When determining whether the court has personal jurisdiction over a defendant in a federal question case, the court must ask whether hailing the defendant into this court accords with the due process clause of the Fifth Amendment, which requires that each party have sufficient minimum contacts with the United States as a whole, and whether this court has the power to serve the defendant. *United States v. Martinez De Ortiz,* 910 F.2d 376, 381-82 (7th Cir.1990). All parties to the instant action clearly have sufficient contacts with the United States. The question becomes, then, whether, at the time of filing, BIC Corp. was amenable to service of process by an Illinois court. Under Fed.R.Civ.P. 4(k), service of the instant complaint may be accomplished by complying with the Illinois long arm statute, 735 ILCS § 5/2-209. *Boston Chicken, Inc. v. Market Bar-B-Que, Inc.,* 922 F.Supp. 96, 98 (N.D.Ill.1996). Because the Illinois long-arm statute extends to the "limit allowed by the Constitution of the United States" and the Illinois Constitution, the inquiry becomes whether BIC Corp.'s minimum contacts with this forum comport with Fourteenth Amendment due process. *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (7th Cir.1997), *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997) (finding that, although the way in which the due process guarantee of the Illinois Constitution is to be construed is for the Illinois Supreme Court to decide, the court has provided very little guidance in this matter, and therefore it is best to examine due process under federal law).

[2] In order to comport with due process, defendants "must have 'minimum contacts' with Illinois such that maintaining a lawsuit here does not offend 'traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In other words, defendants must have "purposefully availed" themselves of the benefits of conducting activities in Illinois such that they should "reasonably anticipate being hailed into court" here. *Worldwide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

*3 The Federal Circuit has summarized these Supreme Court rulings in a three-factor test "to determine whether asserting jurisdiction over an out-of-state defendant comports with due process ...:(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair." ' *Akro Corp. v. Luker,* 45 F.3d 1541, 1545 (Fed.Cir.1995). [FN1]

> FN1. Federal Circuit law applies here because questions regarding personal jurisdiction in patent infringement cases are "intimately related" to the substance of patent law. *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564-65 (Fed.Cir.1994).

BIC Corp. argues that it does not meet the first factor of the Akro test, claiming that it did not purposefully direct its behavior at this forum even though several bottles of the accused product, with BIC Corp.'s name on the label, were found at various locations within this district. Defendants attest that, due to corporate restructuring, BIC Corp. transferred the Wite-Out Plus™ product and remaining packaging materials to BIC USA before the '180 patent was issued, and that the bottles of accused product found in the Northern District of Illinois with a "BIC Corp." moniker were actually BIC USA products packaged with old (pre-patent) BIC Corp. labels. BIC Corp. contends that turning over the product and packaging to BIC USA and ceasing to do any business in Illinois before the issuance of the '180 patent defeats specific personal jurisdiction over it in this district. [FN2]

> FN2. The fact that both BIC USA and BIC

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1466829 (N.D.Ill.)
(Cite as: 2002 WL 1466829 (N.D.Ill.))

Corp. filed the declaratory judgment action in the Southern District of New York, however, indicates that BIC Corp. is still involved with the production and/or sale of the Wite-Out PlusTM product, despite BIC Corp.'s assertions that BIC USA is the only entity that sells the accused product to customers in Illinois and that BIC Corp. has "transferred" the accused product and packaging to BIC USA.

This court disagrees, and concludes that by transferring the accused product and company labels to its affiliate, and then allowing BIC USA to put the product and BIC Corp. labels into stores to be sold in Illinois, is enough to constitute BIC Corp.'s purposeful direction of activity in this forum sufficient to establish a prima facie case of jurisdiction. *See North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1580 (Fed.Cir.1994) (finding that, because they put products into the stream of commerce through a distributor who sells to Illinois, the defendants "knew or reasonably could foresee" that the articles would be resold in Illinois). Therefore, BIC Corp. satisfies the first factor of the *Akro* test.

BIC Corp. also satisfies the second *Akro* factor because the instant patent infringement claim obviously "arises out of or relates to" BIC Corp.'s allegedly infringing activities in this forum.

The third factor this court must consider is whether personal jurisdiction over BIC Corp. is "reasonable and fair." Once the first two *Akro* factors are met, as they have been in this case, the burden shifts to defendants to prove that personal jurisdiction in this forum is not "reasonable and fair." *Akro*, 45 F.3d at 1545-46. This is an exceedingly high standard and, though BIC Corp. has made several convenience arguments for transferring the instant matter, it has not argued that the exercise of jurisdiction is unreasonable or unfair on any ground (other than that it lacks the minimum contacts with Illinois necessary to satisfy due process, an argument with which this court disagrees for the reasons noted above). In fact, the Federal Circuit has held that "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example ... a defendant claiming substantial inconvenience may seek a change of venue." *Akro*, 45 F.3d at 1546 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Consequently, this court finds personal jurisdiction over defendants to be reasonable and fair.

*4 [3] Because all three prongs of the Federal Circuit's test for personal jurisdiction have been met, the court finds personal jurisdiction over both defendants to be proper in the Northern District of Illinois. Because personal jurisdiction is proper in this district, both defendants "reside" here pursuant to 28 U.S.C. § 1391(c) such that venue is proper under 28 U.S.C. § 1400(b). [FN3]

> FN3. Even if venue were not proper in this district, the court would still transfer the instant action to the Southern District of New York under 28 U.S.C. § 1406(a) because doing so is in the interest of justice.

Venue is proper in the Southern District of New York as well. BIC Corp. is incorporated in New York, thereby making personal jurisdiction proper there. *See 28 U.S.C. § 1332*. BIC USA has an office in New York and has represented to this court that it does regular business in New York (including selling the accused product there), which makes jurisdiction over it in New York proper as well. *See Capitol Records, Inc. v. Optical Recording Corp.*, 810 F.Supp. 1350, 1352 (S.D.N.Y.1992). Because personal jurisdiction is proper over both defendants in Illinois and New York, both defendants reside in each forum so that venue is proper in each forum pursuant to 28 U.S.C. § 1400(b). The first prong of 28 U.S.C. § 1404(a), then, is satisfied: venue is proper in both the transferor and transferee courts.

[4] Moving to the second and third prongs of the 28 U.S.C. § 1404(a) analysis, the court must consider whether transfer is for the parties' and witnesses' convenience and in the interest of justice. *Coffey*, 796

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1466829 (N.D.Ill.)
(Cite as: 2002 WL 1466829 (N.D.Ill.))

Page 5

F.2d at 219. To do this, the court must take into account the relevant private and public interests. *Energaire*, 1999 WL 1018039, at *2. The private interests include: "(1) the plaintiff's initial choice of forum; (2) the situs of material events; (3) the ease of access to sources of proof; (4) the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of the witnesses; and (5) the convenience to the parties, specifically their respective residences and their ability to bear the expense of litigating in a particular forum." *Id.*

The plaintiff's choice of forum usually deserves considerable weight, especially when it is plaintiff's home forum. *Id.* Plaintiff's choice of forum becomes less important, however, when it has "relatively weak connections with the operative facts giving rise to the claim." *Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F.Supp. 185, 188 (N.D.Ill.1995). Although the sale of infringing products in this district is certainly significant, the accused product is sold nationwide, so the alleged infringement is presumably occurring in several fora across the country. Therefore, the connection to this forum is not very strong, and the plaintiff's choice of forum in this case should not be accorded significant weight.

The same logic applies to the "situs of material events" prong. The Federal Circuit dictates that "the situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed.Cir.1994). In order to apply this test, courts have often focused on the location of the allegedly infringing sales, or the alleged infringer's place of business. *Energaire*, 1999 WL 1018039, at *2 (and cases cited therein). Again, the allegedly infringing sales have occurred across the country, rather than exclusively in the Northern District of Illinois, and neither of the alleged infringers' places of business are located in Illinois; both defendants' principal places of business are in Milford, Connecticut, which defendants describe as being within the New York Metropolitan area. Accordingly, the situs of material events favors transfer.

**\*5** The "ease of access to sources of proof" prong fur-

ther supports transfer. This court has observed that patent infringement suits usually focus on the activities of the alleged infringer, its employees, and its documents rather than upon those of the plaintiffs. *Id.* at *3 and *Wen Prods., Inc. v. Master Leather, Inc.*, 899 F.Supp. 384, 385 (N.D.Ill.1995). Defendants' Connecticut headquarters, which house most of the documents, employees, and activities relating to the accused product, are obviously closer to New York than to Illinois, such that ease of access to sources of proof would be better achieved by moving this case to New York rather than keeping it in Illinois. [FN4]

> FN4. If not for the related litigation pending in the Southern District of New York, Connecticut would be a logical venue for transfer because the defendants' headquarters are there. However, because all parties will have to litigate a related matter in the Southern District of New York, the interests of efficiency suggest transfer there.

The court must also consider the "availability of compulsory process for the attendance of unwilling witnesses." Plaintiffs claim they intend to call many witnesses from this district and therefore want to litigate in a court that can compel these witnesses to appear. This is unpersuasive, however, because the witnesses identified are plaintiffs' employees and within plaintiffs' control. Also, plaintiffs will most likely call many witnesses from defendants' Milford, Connecticut headquarters because, again, patent suits usually focus on the activities of the alleged infringer. *Id.* To the extent some of those witnesses cannot be considered defendants' employees and, therefore, the party, Milford is within 100 miles of the District Court for the Southern District of New York, leaving them within the court's subpoena power. Thus, this factor leans toward transferring the instant action.

The last private factor to be taken into account is convenience of the parties. In terms of transporting witnesses, documents, and employees, this forum is obviously more convenient for plaintiffs, while New York is obviously more convenient for defendants. In addition to the fact that most of the focus will be on defendants' activities, documents, and staff, the presence of related litigation (regarding the '116 patent)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in the Southern District of New York weighs heavily in favor of transfer. Because the plaintiffs will have to travel to New York to litigate a similar matter involving the same parties anyway, convenience supports transfer. [FN5]

> FN5. Transferring the instant action to a venue in which related litigation is pending also serves the "efficient administration of justice." *Carus Corp. v. Greater Texas Finishing Corp.,* 1992 WL 22691, at *2 (N.D.Ill. Jan.31, 1992). When pending litigation involves the same parties and similar legal, technical and infringement issues, transfer to that venue is logical and strongly favored. *Magnavox Co. v. APF Electronics, Inc.,* 496 F.Supp. 29 (N.D.Ill.1980).

There are also public interest factors to take into account when evaluating whether transfer is convenient and fair under 28 U.S.C. § 1404(a). These include: "(1) the relation of the communities to the issue of the litigation and the desirability of resolving controversies in their locale; (2) the court's familiarity with applicable law; and (3) the congestion of the respective court dockets and the prospects for earlier trial." *Energaire,* 1999 WL 1018039, at *4.

With respect to the "community interest" factor, plaintiffs argue that Illinois has an interest in redressing patent infringement that allegedly occurred within its borders. This is certainly true. Because the accused product is sold nationwide, however, the alleged infringement presumably occurs in many states, that several have equal interests in redressing the alleged infringement. Further, "the administration of justice is served more efficiently when the action is brought before a court that is 'closer to the action." ' *Paul v. Land's End, Inc.,* 742 F.Supp. 512, 514 (N.D.Ill.1990). Once again, the "action" is usually associated with defendants' activities, which in this case are concentrated in Connecticut. These factors combine to favor transfer to New York.

**\*6** Neither party argues that the second factor, the court's familiarity with applicable law, is relevant here since both the Northern District of Illinois and the Southern District of New York are equally well-

equipped to accommodate patent infringement cases. *See* 28 U.S.C. § 1400(b).

This court finds the third factor to be of little import. The median time from the filing of a complaint to trial in a civil action has been about two months less in the Southern District of New York than in this district in recent years. *See* http://www.uscourts.gov/cgibin/cmsd2001.pl. This difference is so negligible as to be neutral; if anything, it slightly favors transfer to New York.

Because private and public interests weigh in favor of transfer, the third and last of the § 1404(a) considerations has been fulfilled. Transfer to the Southern District of New York is proper.

### CONCLUSION

For the foregoing reasons, BIC Corp.'s motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is denied, and defendants' motion to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) is granted.

Not Reported in F.Supp.2d, 2002 WL 1466829 (N.D.Ill.)

### Motions, Pleadings and Filings (Back to top)

• 2002 WL 32682101 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Bic Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (May 28, 2002)Original Image of this Document with Appendix (PDF)

• 2002 WL 32682093 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Transfer this Action to the United States District Court for the Southern District of New York (May 17, 2002)Original Image of this Document with Appendix (PDF)

• 2002 WL 32682088 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Bic Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (May 3, 2002)Original Image of this Document with Ap-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1466829 (N.D.Ill.)
**(Cite as: 2002 WL 1466829 (N.D.Ill.))**

pendix (PDF)

• 2002 WL 32682081 (Trial Pleading) Defendant Bic
Corporation's Answer (Apr. 25, 2002)Original Image
of this Document (PDF)

• 2002 WL 32682074 (Trial Motion, Memorandum
and Affidavit) Memorandum in Support of Defend-
ants' Motion to Transfer this Action the United States
District Court for the Southern District of New York
(Apr. 23, 2002)Original Image of this Document with
Appendix (PDF)

• 2002 WL 32682066 (Trial Pleading) Answer (Apr.
16, 2002)Original Image of this Document (PDF)

• 2002 WL 32682057 (Trial Pleading) Complaint for
Patent Infringement (Jan. 23, 2002)Original Image of
this Document with Appendix (PDF)

• 1:02CV00559 (Docket) (Jan. 23, 2002)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.