# EXHIBIT E

Westlaw.

Not Reported in F.Supp.2d                                                                                         Page 1
Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)
**(Cite as: 2003 WL 1888866 (N.D.Cal.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Jens Ole SORENSEN, Plaintiff,
v.
DAIMLER CHRYSLER AG, et al., Defendants
**No. C 02-4752 MMC (EDL).**

April 11, 2003.

ORDER GRANTING DEFENDANTS' MOTION FOR TRANSFER OF VENUE; VACATING HEARING

CHESNEY, J.

(Docket No. 33)

*1 Before the Court is the motion of defendants DaimlerChrysler AG ("DCAG") and Mercedes-Benz USA, LLC ("MBUSA") to transfer the above-titled action to the District of New Jersey, pursuant to 28 U.S.C. § 1404(a). Plaintiff Jens Ole Sorensen ("Sorensen") has filed opposition, to which defendants have replied. [FN1] Having considered the papers submitted in support of and in opposition to the motion, the Court deems the motion appropriate for decision on the papers, VACATES the hearing scheduled for March 28, 2003, and rules as follows.

> FN1. By separate order, filed March 31, 2003, the Court has granted Sorensen's unopposed motion to join as a plaintiff in this action SRD Trust, the entity that allegedly obtained from Sorensen all rights to the '184 patent after the instant action was instituted.

BACKGROUND

Sorensen alleges that he invented a process for stabilized injection molding and thereafter obtained U.S. Patent No. 4,935,184 ("the '184 patent"). Sorensen alleges that defendants engage in the manufacture and sale of automobiles, including automobiles imported for sale into the United States. According to Sorensen, defendants' imported automobiles include "lens assemblies manufactured using the '184 patent process." (*See* Compl. ¶ 49 .) The lens assemblies, which defendants refer to as "SLK taillights" or "light assemblies," are manufactured in Germany by non-party Schefenacker Vision Systems Germany GmbH & Co. ("Schefenacker"). (*See* Defs.' Mot. Ex. 2 at 2-3.) The automobiles incorporating the lens assemblies are manufactured in Germany by defendant DCAG, (*see* Jung Decl. ¶ 2), and are sold and marketed in the United States by defendant MBUSA. (*See* Barnard Decl., filed February 19, 2003, ¶ 1.)

DISCUSSION

Defendants argue that the District of New Jersey is a more convenient forum than the Northern District of California ("Northern District"). [FN2]

> FN2. Defendants do not argue that venue is improper in the Northern District.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In order to transfer an action under § 1404(a), a district court must find "that the district court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favor transfer." See *Hatch v. Reliance Ins. Co.,* 758 F.2d 409, 414 (9th Cir.) (internal quotations omitted), *cert. denied,* 474 U.S. 1021 (1985).

Here, the action "might have been brought" in the District of New Jersey, as defendant DCAG is an alien corporation, *see* 28 U.S.C. § 1391(d) (providing "alien may be sued in any district"), and defendant MBUSA resides in New Jersey. See 28 U.S.C. § 1400(b) (providing action for patent infringement may be brought in district where defendant resides).

With respect to the issue of convenience, a district court must "weigh multiple factors in its determination whether transfer is appropriate in a particular case." See *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir.), *cert. denied,* 531 U.S. 928

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00460   Document 10-3   Filed 02/09/2007   Page 3 of 20

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)
**(Cite as: 2003 WL 1888866 (N.D.Cal.))**

. One important factor is the convenience of witnesses. *See id. at 499* (holding where "more of the relevant witnesses" resided in plaintiff's chosen forum, district court properly weighed that finding against transfer). Indeed, as one district court observed, this factor is "often the most important factor." *See Steelcase Inc. v. Haworth Inc., 41 U.S.P.Q.2d 1468, 1470 (C.D.Cal.1996).*

*2 In their initial disclosures made to Sorensen on January 29, 2003, defendants identify four witnesses employed by MBUSA in New Jersey, whom defendants assert are likely to offer testimony concerning importation, distribution, sales and/or marketing decisions made by MBUSA. *(See* Defs.' Mot. Ex. 1 at 2-3.) Additionally, defendants initially disclosed three witnesses employed by DCAG in Germany, two of whom, defendants assert, are likely to offer testimony concerning DCAG's design and development of the light assemblies, and a third who, according to defendants, is likely to offer testimony concerning DCAG's communications with non-party Schefenacker, the manufacturer of the light assemblies. *(See* Defs.' Mot. Ex. 2 at 2-3.) Defendants also initially disclosed witnesses in Germany who are employed by Schefenacker. *(See* Defs.' Mot. Ex. 2 at 3.) [FN3] Sorensen, in his initial disclosures made to defendants on January 27, 2003, agrees that "officers and/or employees of Defendants and/or their fabricators" are witnesses on such issues as the design and manufacture of the accused products, sales figures, pricing decisions, and defendants' decisions made after being notified of Sorensen's claim of infringement. *(See* Defs.' Mot. Ex. 3 at 2.) Consequently, all parties are in accord that witnesses employed by defendants and Schefenacker, [FN4] all of whom work in either New Jersey or Germany, are potential witnesses in the instant action.

> FN3. Defendants identified one Schefenacker employee by name, stating "[t]here may, however, be other Schefenacker employees with greater knowledge of the process used to manufacture the SLK taillights." *(See id.)*

> FN4. As noted, according to defendants, the taillights are manufactured by Schefenacker and thereafter incorporated into automobiles manufactured by DCAG. Thus, it appears Sorensen's reference to "fabricators" would include Schefenacker.

Sorensen, the inventor and a resident of the Cayman Islands, initially disclosed both himself and Paul Brown ("Brown"), an employee of non-party Turn-Key-Tech, LLC ("Turn-Key"), [FN5] a company located in the Southern District of California, as potential witnesses. *(See* Defs.' Mot. Ex. 3 at 1.) According to Sorensen, he and Brown are witnesses as to the patented technology and identification of accused products. *(See* Defs.' Mot. Ex. 3 at 2.) Defendants agree that both Sorensen and Brown are likely to be called as witnesses at trial. *(See* Defs.' Mot. Ex. 1 at 3:18-20; Defs.' Reply at 10:18-20.)

> FN5. According to Brown, Turn-Key, prior to April 2002, owned "all substantive rights to use, sub-license, and enforce the '184 patent" and, in April 2002, assigned its rights back to Sorensen. *(See* Brown Decl. ¶¶ 4, 11.)

In his opposition, Sorensen additionally identifies as witnesses Jens Erik Sorensen, Trustee of SRD Trust, *(see* Jens Erik Sorensen Decl. ¶ 1), and John Tang-Pedersen ("Tang-Pedersen"), Turn-Key's Plant Engineer. *(See* Tang-Pedersen Decl. ¶ 2.) Jens Erik Sorensen states he is likely to testify as to his efforts to license the '184 patent, *(see* Jens Erik Sorensen Decl. ¶ 6); Tang-Pedersen states he is likely to testify as to the chain of custody of automobile lamp lenses currently in Turn-Key's warehouse located in the Southern District of California. *(See* Tang-Pedersen Decl. ¶¶ 2-3; Brown Decl. ¶ 2.) Defendants argue the materiality of such testimony is questionable in light of the fact that Sorensen did not disclose either of those witnesses in his initial disclosures, thus indicating that as of January 27, 2003, Sorensen was not of the opinion that Jens Erik Sorensen and Tang-Pedersen were "likely to have discoverable information." *See* Fed.R.Civ.P. 26(a)(1) (providing party making initial disclosures "must" disclose name of "each individual likely to have discoverable information"). Sorensen has not had an opportunity to explain why he omitted Jens Erik Sorensen and Tang-Pedersen from plaintiff's initial disclosures. In any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 3
Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)
**(Cite as: 2003 WL 1888866 (N.D.Cal.))**

event, there is no showing that either individual resides in the Northern District. Jens Erik Pedersen works in the Southern District of California [FN6] and Tang-Pedersen, as noted, works for a company in that district as well.

> FN6. Jens Erik Sorensen is President and General Manager of Intuii, a company located in the Southern District of California. (*See* Jens Erik Sorensen Decl. ¶ 4; Savidge Decl. ¶ 3.)

*3 In sum, no potential witness resides in or near the Northern District of California. All such witnesses reside and/or work in New Jersey, Germany, the Cayman Islands, or the Southern District of California, with a sizeable majority residing a significant distance from the Northern District. [FN7] Thus, if the action remains in this forum, all witnesses will be required to travel significant distances to attend trial. Even Brown, who resides in the Southern District of California, will be required to travel hundreds of miles to the Northern District. [FN8] By contrast, if the action is transferred to the District of New Jersey, the four potential witnesses working in New Jersey will not be required to travel any significant distance, and those witnesses traveling from Germany will face a considerably shorter trip. On balance, this factor weighs in favor of transfer.

> FN7. The convenience of witnesses employed by parties is not as important a factor as the convenience of non-party witnesses. *See Hollyanne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1307 n. 2 (Fed.Cir.1999). Here, however, almost all witnesses are employed by the parties and to the extent they are not, they are closely aligned with a party. For example, Brown will testify as an expert for plaintiffs. (*See* Brown Decl. ¶ 15.)

> FN8. If Jens Erik Sorensen and Tang-Pedersen testify at trial, they would be required to travel a similar distance to the Northern District.

In *Jones,* the Ninth Circuit identified eight additional factors that a district court should consider. "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *See id.* at 498-99. The Court addresses these factors in turn.

At the outset, the Court notes that because the action does not involve an agreement, the first factor identified in *Jones* is not applicable and, as the action arises solely under federal law, the second factor likewise is inapplicable to the instant action.

Turning to the third factor enumerated in Jones, although "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum ... the presumption applies with less force when the plaintiff or real parties in interest are foreign." *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1982). As Sorensen is a resident of the Cayman Islands, (*see* Compl. ¶ 1), Sorensen's choice of the Northern District is entitled to little deference. Although Sorensen asserts that the additional plaintiff, SRD Trust, is a "California trust," he does not contend that SRD Trust resides in the Northern District. To the extent any evidence as to residency has been submitted, that evidence strongly suggests that SRD Trust resides in the Southern District of California because, as noted above, Jens E. Sorensen, Trustee of SRD Trust, is employed in the Southern District of California.

Moreover, even where a plaintiff has chosen a forum close to his place of residence, district courts have applied a "general rule" that, in actions based on a claim of patent infringement, a plaintiff's choice of forum is accorded little deference where the central facts of the lawsuit occur outside the plaintiff's chosen forum. *See, e.g., S.C. Johnson & Son, Inc. v. Gillette Co.,* 571 F.Supp. 1185, 1187-88 (N.D.Ill.1983). In such circumstances, "the preferred forum is that which is the center of the accused activity." *See id.* The "center of the accused activity" is the forum where the defendant is alleged to have de-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00460　　Document 10-3　　Filed 02/09/2007　　Page 5 of 20

Not Reported in F.Supp.2d　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 4
Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)
**(Cite as: 2003 WL 1888866 (N.D.Cal.))**

veloped, tested, researched, produced, marketed, and made sales decisions concerning the accused product. *See id.* at 1188 (holding preferred forum was district in which defendant conducted "all development, testing, research, and production" and made "virtually all marketing and sales decisions" concerning accused product); *see also Saint-Gobain Calmar, Inc. v. Nat'l Products Corp.,* 230 F.Supp.2d 655, 660 (E.D.Pa.2002) (holding plaintiff's choice of forum entitled to less deference where "center of gravity of the alleged infringement" occurred in another forum where defendant assembled and shipped accused device). Here, the center of the accused activity is Germany, where all design and manufacturing decisions were made, or New Jersey, where all marketing and sales decisions were made. *See* Jung Decl. ¶ 2; Barnard Decl., filed February 19, 2003, ¶ 5; *see L.G. Electronics Inc. v. First Int'l Computer, Inc.,* 138 F.Supp.2d 574, 590 (D.N.J.2001) (holding "center of gravity of the allegedly infringing activity" in Taiwan or California where one defendant manufactured accused device in Taiwan and second defendant make marketing and sales decisions in California). Consequently, Sorensen's choice of the Northern District is entitled to little, if any, deference.

*4 Next, there is no showing that either Sorensen or SRD Trust have any contacts with either the Northern District or New Jersey. MBUSA, a subsidiary of DCAG, has contacts with both the Northern District and New Jersey. Although MBUSA markets automobiles throughout the United States, (*see* Barnard Decl., filed February 19, 2003, ¶¶ 2-3), and maintains a regional office in the Northern District, (*see* Barnard Decl., filed March 14, 2003, ¶ 4), MBUSA's principal place of business, where it employs 800 people, is in New Jersey. (*See* Barnard Decl., filed February 19, 2003, ¶¶ 1, 4, 5.) Moreover, as noted, the New Jersey headquarters is the place where MBUSA makes all marketing and sales decisions concerning the accused products. (*See id.* ¶ 5.) Accordingly, the fourth *Jones* factor weighs in favor of transfer.

As to contacts relating to the plaintiff's cause of action, both parties' contacts with the Northern District appear to relate to the instant claims only to the extent that infringing products may have been sold in the Northern District. Those contacts, however, are likely to exist in every district in the United States, including the District of New Jersey. By contrast, as discussed above, one of the centers of the accused activity is New Jersey. Accordingly, the fifth *Jones* factor weighs in favor of transfer.

As to the costs of litigation, defendants argue that because those MBUSA employees who are potential witnesses work in New Jersey and the DCAG employees who are potential witnesses reside in Germany, defendants' costs will increase if such witnesses must travel to California instead of New Jersey. Sorensen argues that it would be a burden to bring witnesses and evidence to New Jersey. In short, defendants argue that transfer will lower their costs, while Sorensen argues that transfer will increase his costs. No party, however, shows that its costs will significantly differ depending on whether the instant matter is heard in the Northern District or the District of New Jersey. Accordingly, the sixth factor weighs in favor of neither party.

With respect to the seventh of the factors enumerated in *Jones,* the parties' ability to compel attendance of unwilling non-party witnesses, defendants identify witnesses employed by non-party Schefenacker, while Sorensen has identified witnesses associated with non-party Turn-Key. Neither party, however, asserts that any non-party witness is unwilling to travel to either the Northern District or New Jersey. Accordingly, the seventh *Jones* factor weighs in favor of neither party.

As to the final *Jones* factor, defendants assert that documents likely to be used as evidence are located in MBUSA's records in New Jersey and DCAG's records in Germany. Sorensen asserts that Turn-Key maintains a warehouse in the Southern District of California, which facility contains "samples" of automobile lenses that have been analyzed "for possible infringement," (*see* Brown Decl. ¶ 2, 10), and that such samples likely will be offered as evidence. No party identifies any potentially relevant documents or tangible items located in the Northern District. Assuming the above-referenced evidence would have to be transported a considerable distance for trial or other purposes, there is no showing that moving such material to either the Northern District or New Jersey

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00460   Document 10-3   Filed 02/09/2007   Page 6 of 20

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)
**(Cite as: 2003 WL 1888866 (N.D.Cal.))**

would hamper or otherwise affect the accessibility of such evidence. Accordingly, the eighth *Jones* factor weighs in favor of neither party.

*5 In sum, the most probative of the factors discussed above weigh in favor of transferring the instant complaint to the District of New Jersey and the remaining factors weigh in favor of neither party. Significantly, no factor weighs in favor of retention of the action in the Northern District given that neither Sorensen nor SRD Trust resides in the Northern District, that no potential witness resides in the Northern District, and that no party has identified any potential evidence located in the Northern District. Accordingly, the Court finds that transfer of the instant action to the District of New Jersey is appropriate.

CONCLUSION

For the reasons stated above, defendants' motion for transfer of venue to the District of New Jersey is hereby GRANTED.

The Clerk of the Court shall transfer the above-titled action to the District of New Jersey.

This order closes Docket No. 33.

IT IS SO ORDERED.

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 11, 2003, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

James Michael Kaler

Law Offices of J. Michael Kaler

9930 Mesa Rim Road, Suite 200

San Diego, CA 92121

Peter B. Ackerman

Crowell & Moring LLP

3 Park Plaza, 20th Floor

Irvine, CA 92614-8505

Kent A. Gardiner

Donald D. Evenson

David M. Schnorrenberg

Paul Alp

Crowell & Moring LLP

1001 Pennsylvania Avenue, N.W.

Washington, D.C. 20002

Not Reported in F.Supp.2d, 2003 WL 1888866 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 3:02cv04752 (Docket) (Oct. 01, 2002)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

**Westlaw.**

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 1018039 (N.D.Ill.)
**(Cite as: 1999 WL 1018039 (N.D.Ill.))**

Page 1

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
ENERGAIRE CORPORATION, Plaintiff,
v.
E.S. ORIGINALS, INC., Defendant.
**No. 99 C 3252.**

Nov. 2, 1999.

*MEMORANDUM OPINION AND ORDER*
GETTLEMAN, J.

*1 Plaintiff Energaire Corp. has filed a single-count complaint against defendant E.S. Originals, Inc., alleging that defendant designs and sells shoes that infringe its patent for Thrust Producing Shoe Sole and Heel Improved Stability, U.S. patent number 5,524,364 ("the '364 patent"). Defendant has filed a motion to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). For the following reasons, defendant's motion is granted.

FACTS
Plaintiff is a California corporation. Defendant is a New York corporation that designs shoes and sells them nationwide. Plaintiff claims that defendant's "cavity-shoe," an athletic shoe with a special sole, infringes the '364 patent.

Defendant's principal place of business is in New York, but it maintains an office with a single employee in Illinois. Plaintiff has no employees and a handful of officers and directors. The only individuals connected with the plaintiff who regularly perform activities for the company reside in three different states and work out of their homes: Stuart Jenkins, plaintiff's president, resides in Cheyenne, Wyoming; Elizabeth Cole, plaintiff's secretary and treasurer, resides in Pebble Beach, California; and Harry W. Edwards, a member of plaintiff's board of directors, resides in Barrington, Illinois. The '364 patent was invented by Edwards, Jenkins, George S. Cole (G.Cole), and Karl M. Schmidt (who is deceased). According to plaintiff, only Edwards and Jenkins are available to testify. Plaintiff states the instant case is connected to the Northern District of Illinois because Edwards lives and works here, and because Edwards provides technical support for the company and made a more significant contribution to the invention than Jenkins.

DISCUSSION
A transfer is appropriate under 28 U.S.C. § 1404(a) where the moving party demonstrates: (1) venue is proper in both transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986). Defendants, as the moving parties, must show that the "transferee forum is clearly more convenient" than the transferor forum. *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir.1989) (citing *Coffey,* 796 F.2d 217, 219-20 (7th Cir.1986). Moreover, defendants must show that a transfer will promote the efficient administration of justice; they may not simply shift the inconvenience from one party to another. See *Black v. Mitsubishi Motors Credit of America, Inc.,* 1994 WL 424112, at *2 (N.D.Ill. Aug. 10, 1994).

The parties agree that venue is proper in both the transferor and the transferee court. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Defendant resides in both fora because it is incorporated and has its principal place of business in New York, but maintains an office in Illinois. Accordingly, the court has power to transfer this case.

*2 The court must also consider the relevant private and public interests in evaluating the convenience and fairness of a transfer of venue. The private interests include: (1) the plaintiff's initial choice of forum; (2) the situs of material events; (3) the ease of access to sources of proof; (4) the availability of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00460     Document 10-3     Filed 02/09/2007     Page 9 of 20

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 1999 WL 1018039 (N.D.Ill.)
**(Cite as: 1999 WL 1018039 (N.D.Ill.))**

compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of the witnesses; and (5) the convenience to the parties, specifically their respective residences and their ability to bear the expense of litigating in a particular forum. *Georgouses v. NaTec Resources, Inc.*, 963 F.Supp. 728, 730 (N.D.Ill.1997).

A plaintiff's choice of forum is entitled to substantial weight, particularly when it is also the plaintiff's home forum. See *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1167 (N.D.Ill.1995) . [FN1] The plaintiff's choice of forum, however, is not conclusive. When "the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum, 'the plaintiff's preference has minimal value" ' even if it is its home forum. *Dunn v. Soo Line R. Co.*, 864 F.Supp. 64, 65 (N.D.Ill.1994); *see also Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F.Supp. 185, 188 (N.D.Ill.1995) ("[T]he weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim."). Thus, the court must consider the situs of material events to determine how much weight to assign plaintiff's choice of forum.

> FN1. Although plaintiff argues that Illinois is its home forum, defendant has attached a Dun & Bradstreet ("D & B") report that belies this argument, and plaintiff has not lodged an objection about the report's admissibility. According to the D & B report, which was printed after plaintiff filed its response memorandum, plaintiff's main office is in Pebble Beach, California, and plaintiff has one branch office in Thousand Oaks, California. Two of plaintiff's three employees (none of whom includes Edwards) are likewise located in California.

The instant claim arises out of defendant's alleged infringement of plaintiff's patent. The Federal Circuit has held that in patent cases, "the situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed.Cir.1994). In accordance with this test, courts often focus on the location of allegedly infringing sales, *see, e.g., id.; North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed.Cir.1994), or on the alleged infringer's place of business, *see SRAM Corp. v. Sunrace Roots Enterprise Co., Ltd.*, 953 F.Supp. 257, 259 (N.D.Ill.1997).

Defendant asks the court to transfer the instant case to New York, its place of business, while plaintiff argues that the case should remain in Illinois because infringing sales occurred here. Edward Anteby ("Anteby"), defendant's office manager, attests in his affidavit that the offending shoes were designed in New York and that all pertinent sales decisions were made in New York. Plaintiff responds that Illinois is the situs of the injury because the employee in defendant's Illinois office offered the shoes to Sears. According to Anteby, however, defendant never actually sold shoes to Sears. Plaintiff also argues that it was injured in this forum because Edwards attests that he purchased a single pair of defendant's shoes from a Walmart store in Illinois. Yet Anteby states that the decision to sell to Walmart was made in the New York office, and that defendant's New York office sold the shoes to Walmart's headquarters in Arkansas, not directly to its Illinois stores.

*3 The Federal Circuit has held that, "to sell an infringing article to a buyer in Illinois is to commit a tort there...." *North American Philips Corp.*, 35 F.3d at 1579. Nevertheless, "[s]ales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Anchor Wall Systems, Inc. v. R & D Concrete Prods., Inc.*, 55 F.Supp.2d 871, 874 (N.D.Ill.1999); *see also Greene Manufacturing Co. v. Marquette Tool & Die Co.*, 1998 WL 395155, at *2 (N.D.Ill. July 9, 1998). Plaintiff has presented evidence that only a single pair of defendant's shoes was sold in Illinois. The connection between Illinois and the facts giving rise to plaintiff's claim is tenuous indeed. *See, e.g., Greene*, 1998 WL 395155, at *2 (holding that Illinois lacked a significant connection to the plaintiff's patent infringement claim even though the plaintiff had demonstrated that 7.6% of the sales of the allegedly infringing product had occurred in Illinois).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 3
Not Reported in F.Supp.2d, 1999 WL 1018039 (N.D.Ill.)
**(Cite as: 1999 WL 1018039 (N.D.Ill.))**

The court holds that because plaintiff has chosen a forum that has little connection to the relevant facts, its choice of forum is not entitled to substantial weight. Moreover, the court notes that "[i]ntellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents," _Wen Prods., Inc. v. Master Leather Inc., 899 F.Supp. 384, 385 (N.D.Ill.1995)_, and finds that the situs of material events in the instant case is New York, not Illinois. The second factor of the private interests test therefore leans in defendant's favor.

As for the third factor, ease of access to evidence and sources of proof, "a number of courts have recognized that 'practicality and convenience are best served when a patent case is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business so as to facilitate the production and investigation of books, records and other data necessary to the discovery and trial techniques employed in the patent field." ' _Ardco, Inc. v. Page, Ricker, Felson Marketing, Inc., 25 U.S.P.Q.2d 1382, 1386 (N.D.Ill.1992)_ (quoting _Spound v. Action Industries, Inc., 369 F.Supp. 1066, 1069 (N.D.Ill.1979)_). Defendant argues that all of the documents relating to the invention and design of the cavity-shoes are in New York, and that none of the sales records are in Illinois, but are either maintained in the New York office or are accessible through the New York office. Plaintiff responds that defendant asserts an affirmative defense of patent invalidity that will require plaintiff to present evidence about the invention and prosecution of the '364 patent. See _Abbot Laboratories v. Zenith Laboratories Inc., 35 U.S.P.Q.2d 1161, 1164 (N.D.Ill.1995)_. According to plaintiff, all such documents are located in Illinois. The court therefore determines that this factor is neutral.

With respect to the fourth factor, convenience of witnesses, the court must consider the effect of location of the witnesses on the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses. See _Georgouses, 963 F.Supp. at 730_. In deciding this factor, the court considers the number of witnesses located in each district, as well as the nature and importance of the witnesses' testimony. _Rohde v. Central R.R. of Indiana, 951 F.Supp. 746, 748 (N.D.Ill.1997)_.

*4 Plaintiff argues that the court should not transfer the instant case because Edwards, an Illinois resident, will be its primary witness at trial. Since Edwards is a member of plaintiff's board of directors and plays an integral role in plaintiff's business, however, the court presumes that he will be available to testify wherever this case is tried. The only third party witness plaintiff mentions is an unnamed representative of Walmart, which is headquartered in Arkansas, and is therefore not within the subpoena power of either court. Defendant argues that all of its material witnesses, including the designers of the patent, are located in New York. Because neither party presents evidence of third party witnesses who may need to be compelled to testify, and because Edwards is the only witness located in Illinois, the court finds that the convenience of witnesses weighs in favor of transferring this action.

In considering the fifth factor, convenience of the parties, the court takes into account each party's ability to bear the expense of litigating in a distant forum. Plaintiff argues that if this case is transferred, it will be saddled with increased costs because it will have to retain New York counsel and will have to pay for transportation and accommodations for current counsel. Plaintiff also argues that it will incur additional costs if Edwards is unavailable to conduct business from his home office in Illinois. Plaintiff suggests that it might even be forced to shut down its Illinois office if this action were transferred, but none of plaintiff's witnesses attest to this fact. The court concludes that the convenience of the parties weighs in plaintiff's favor.

In addition to the private interest factors, the court must also consider the following public interest factors that may warrant transfer: (1) the relation of the communities to the issue of the litigation and the desirability of resolving controversies in their locale; (2) the court's familiarity with applicable law; and (3) the congestion of the respective court dockets and the prospects for earlier trial. See _Hughes v. Cargill, Inc., 1994 WL 142994, at *2 (N.D.Ill. Apr. 14, 1994)_.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00460    Document 10-3    Filed 02/09/2007    Page 11 of 20

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 1999 WL 1018039 (N.D.Ill.)
**(Cite as: 1999 WL 1018039 (N.D.Ill.))**

Defendant admits that factors two and three do not favor transfer. With respect to the first factor, defendant argues that neither party has a close connection to Illinois, but that defendant has a close connection with New York. According to defendant, those who will be most affected by the decision in the instant case are defendant's employees in New York. Plaintiff responds that Illinois has an interest in preventing infringing products from crossing state lines and entering the stream of commerce in Illinois. But the cavity-shoes are presumably available at Walmarts throughout the country. The administration of justice is served more efficiently when the action is brought before a court that is "closer to the action." *Paul v. Land's End, Inc.*, 742 F.Supp. 512, 514 (N.D.Ill.1990). Because the allegedly infringing cavity-shoes were designed at defendant's place of business, and because all decisions to distribute the shoes were made there as well, the New York forum is closer to the action.

*5 In conclusion, the instant case has no significant connection to this forum. Plaintiff valiantly argues that Edwards will be its main witness and that his home office is the center of its business, but according to the D & B report, Edwards office is not plaintiff's office, and Edwards is neither an employee nor an officer of the company. Plaintiff's only other argument is that a single sale of the allegedly infringing product occurred in Illinois. Although the court recognizes that plaintiff may be inconvenienced by transfer, all of the evidence relating to the alleged infringement of plaintiff's patent and the majority of the witnesses who will testify about the invention and sales of the allegedly infringing product are located in New York. Accordingly, the court concludes that the interests of justice would be better served by transferring the instant case to the Southern District of New York. Defendant's motion to transfer is granted.

Not Reported in F.Supp.2d, 1999 WL 1018039 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 1:99cv03252 (Docket) (May. 17, 1999)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 342306 (S.D.N.Y.)
(Cite as: 1999 WL 342306 (S.D.N.Y.))

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
BIONX IMPLANTS, INC. and BIONX IMPLANTS, OY, Plaintiffs,
v.
BIOMET, INC., and WALTER LORENZ SURGICAL, INC., Defendants.
No. 99 CIV. 740(WHP).

May 27, 1999.

Michael D. Loughnane, Esq., Paul M. Richter, Jr., Esq., Kenyon & Kenyon, New York.

William F. Cavanaugh, Jr., Esq., Patterson, Belknap, Webb & Tyler, New York.

MEMORANDUM AND ORDER
PAULEY, District J.

*1 Plaintiffs Bionx Implants, Inc., and Bionx Implants, Oy filed this patent infringement action against Defendants Biomet, Inc., and Walter Lorenz Surgical, Inc. on February 1, 1999. Defendants now move to transfer this action to the Northern District of Indiana pursuant to 28 U.S.C. § 1404(a). Upon consideration of the parties submissions [FN1] and oral argument held on May 7, 1999, Defendants' motion to transfer is granted.

> FN1. In Support of the motion to transfer, Defendants have submitted the following: Memorandum of Law in Support of the Motion to Transfer; Declaration of Craig Blaschke ("Blaschke Decl."); Declaration of William F. Cavanaugh, Jr. ("Cavanaugh Decl."); Reply Memorandum in Support of the Motion to Transfer; Reply Declaration of Craig Blaschke ("Blaschke Reply Decl."); Declaration of David Sarver ("Sarver Decl."); Declaration of Roy Wiley ("Wiley Decl."); Reply Declaration of John D. Winter ("Winter Decl."). In Opposition to the motion to transfer, Plaintiffs have submitted the following: Memorandum of Law in Opposition to Defendants' Motion to Transfer; Declaration of David W. Anderson ("Anderson Decl.").

Background

Bionx Implants, Inc. ("Bionx") is a Delaware corporation with its principal place of business in Pennsylvania. Bionx Implants, Oy, "Bionx Oy" a subsidiary of Bionx, is a Finnish corporation with its principal place of business in Finland. Neither Bionx nor Bionx Oy operate any facilities or employ any individuals in New York. Biomet, Inc. ("Biomet") is an Indiana corporation with its principal place of business in Indiana. It is engaged in the business of designing, manufacturing, and marketing medical devices. Biomet has approximately 1,000 employees in Indiana, and through independent distributors, sells its products in all fifty states and many foreign countries. Walter Lorenz Surgical, Inc. ("Lorenz"), a wholly-owned subsidiary of Biomet, is a Florida corporation with its principal place of business in Florida. Neither Biomet nor Lorenz has facilities in New York. (Blaschke Decl. ¶ 3.)

Plaintiff alleges that on November 6, 1990, the United States Patent Office issued patent number 4,968,317 ("the Tormalla patent") to Professor Pertti Tormalla and five co-inventors, who assigned all their rights in the patent to Biocon Oy, a predecessor company to Bionx Oy. (Compl.¶ 9.) The Tormalla patent related to resorbable polymeric compounds and surgical devices made from these compounds, namely resorbable screws. Bionx Oy manufactures these resorbable screws in Finland and imports them into the United States. Bionx then sells the screws in the United States.

Bionx alleges that Biomet is directly infringing on the Tormalla patent and inducing the direct infringement by others through its manufacture and sale of its resorbable screws in the United States. Biomet contends that in July 1991 at the Indiana facility, Biomet developed the "Lactosorb screw," a medical device made of resorbable polymeric compounds. Biomet's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00460    Document 10-3    Filed 02/09/2007    Page 14 of 20

Not Reported in F.Supp.2d                                                                                                                                    Page 2
Not Reported in F.Supp.2d, 1999 WL 342306 (S.D.N.Y.)
**(Cite as: 1999 WL 342306 (S.D.N.Y.))**

documentation concerning the design, research, development, and manufacture of the Lactosorb screws is located in Indiana or Florida. (Blaschke Decl. ¶ 4.) Biomet manufactures the screws in Indiana and then ships them to Lorenz in Florida.

Bionx alleges that Lorenz is directly infringing the Tormalla patent through its sale in the United States of the Lactosorb screws. Lorenz markets the screws nationally through a network of independent, non-salaried sales distributors. (Blaschke Decl. ¶ 6.) Through these distributors, 4.5% of total sales have occurred in New York State. Documents regarding the shipment of Lactosorb screws to Lorenz are located in Florida. (Blaschke Decl. ¶ 8.)

*2 Bionx further alleges that the actions of Biomet and Lorenz have been willful and deliberate, causing immediate and irreparable harm to the business of Bionx and Bionx Oy. Bionx and Bionx Oy seek preliminary and permanent injunctive relief against both Biomet and Lorenz as well as monetary damages and attorneys' fees.

Discussion

The first determination in a transfer motion is whether the action could have been brought in the district to which transfer is proposed, namely whether venue and personal jurisdiction are proper in the transferee forum. *Arrow Electronics, Inc. v. Ducommun Inc., 724 F.Supp. 264, 265 (S.D.N.Y.1989)*. Venue in a patent infringement action is governed by 28 U.S.C. § 1400(b), which states in relevant part that an infringement action "may be brought in any district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." See *Mickowski v. Visi-Trak Corp., 36 F.Supp .2d 171, 176 (S.D.N.Y.1999)* (Sprizzo J.) Because Biomet has a regular and established place of business in Warsaw, Indiana and the alleged acts of infringement took place there, the action could have been brought against Biomet in the Northern District of Indiana. See *Coloplast v. Amoena Corp., 25 U.S.P.Q.2d 1549, 1550 (S.D.N.Y.1992)* (Mukasey J.)

Lorenz, on the other hand, does not have a regular and established place of business in Indiana, and thus a determination must be made as to whether Lorenz resides in Indiana. In 1988, Congress amended the general corporate venue statute, 28 U.S.C. 1391(c) to provide that a defendant corporation resides in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. The parties' submissions are silent on the issue of whether the present action could have been instituted against Lorenz in Indiana, namely whether the District Court for the Northern District of Indiana has personal jurisdiction over Lorenz. Lorenz may not simply consent to the jurisdiction of District Court of the Northern District of Indiana. See *Morales v. Navieras de Puerto Rico, 713 F.Supp. 711, 712 (S.D.N.Y.1989)* (Walker J.) ("[T]he transferee district must be one where jurisdiction over the defendant could have been obtained at the time the action was commenced regardless of defendant's consent.")

Personal jurisdiction in a federal question action is determined by applying the forum state's long-arm statute. See *Dimensional Media Assoc., Inc. v. Optical Prod. Dev. Corp., No. 98-6552, 1999 WL 165687, (S.D.N.Y. Mar. 25, 1999)* (citing *Pilates, Inc. v. Current Concepts, No. 96 Civ. 0043, 1996 WL 599654,* at *1 (S.D.N.Y. Oct. 18, 1996)). Under Indiana's long-arm statute, an out-of-state organization submits to the jurisdiction of Indiana courts when it supplies good and services within the state. See *J.R. Lee v. Goshen Rubber Co., Inc., 635 N.E.2d 214, 215 (Ind.Ct.App.1994)*. At oral argument, Defendants represented that Lorenz does sell the Lactosorb screws in the Northern District of Indiana. Thus, Lorenz is subject to personal jurisdiction in the Northern District of Indiana, and this action could have been brought in that district.

*3 The second determination in a motion to transfer is whether the transfer would serve the convenience of the parties and witnesses and is in the interests of justice. See 28 U.S.C. § 1404(a) ("For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.") The moving party bears the burden of establishing by clear and convincing evidence that transfer is in the interests of justice. *Arrow Electronics, Inc. v. Ducommun Inc., 724 F.Supp. 264, 265*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00460    Document 10-3    Filed 02/09/2007    Page 15 of 20

Not Reported in F.Supp.2d                                                                                       Page 3
Not Reported in F.Supp.2d, 1999 WL 342306 (S.D.N.Y.)
**(Cite as: 1999 WL 342306 (S.D.N.Y.))**

(S.D.N.Y.1989) (Leisure J.); *Motown Record Corp. v. Mary Jane Girls, Inc.,* 660 F.Supp. 174, 175 (S.D.N.Y.1987).

Section 1404(a) allows a district judge considerable discretion in adjudicating a motion for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992); *Red Bull Assoc. v. Best Western Int'l, Inc.,* 862 F.2d 963, 967 (2d Cir.1988). The following eight factors are traditionally considered in determining whether to transfer a case pursuant to section 1404(a): "1) the convenience of the parties and witnesses; 2) the location of relevant documents and the relative ease of access to sources of proof; 3) the locus of operative facts; 4) the availability of process to compel the attendance of unwilling witnesses; 5) the relative means of the parties; 6) the forum's familiarity with the governing law; 7) the weight accorded the plaintiff's choice of forum; and 8)the interests of justice and trial efficiency based on the totality of the circumstances." *Computer Generated Solutions, Inc., v. L'Koral Inc.,* No. 97-6298, 1999 WL 14012, at *2 (S.D.N.Y. Jan. 14, 1999); *Anadigics, Inc. v. Raytheon Co.,* 903 F.Supp. 615, 617 (S.D.N.Y.1995).

The core determination under section 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of nonparty and party witnesses. *Palace Exploration Co. v. Petroleum Dev. Co.,* No. 98-248, 1998 WL 790923, at * 9 (S.D.N.Y. Nov. 13, 1998) (Carter J.); *Nieves,* 700 F.Supp. at 772. Biomet's current employees who have relevant knowledge regarding the alleged infringement reside in or around Warsaw, Indiana. These employees include Craig Blaschke, General Manager of Biomaterials Technology, William Pietrzak, Director of Marketing Biomaterials, Mary Verstynen, Manager of Clinical Affairs, Dean Golden, Manufacturing Manager of Biomaterials, and David Ahlersmeye, Patent Counsel. (Blaschke Decl. ¶ 9.) A number of third-party witnesses who are knowledgeable about the development and manufacture of Lactosorb screws are also located in Indiana. For example, two former Biomet employees, David Salver, a former Product Development Manager for Lactosorb screws, and Roy Wiley, a former development engineer reside in Indiana.

(Blaschke Decl. ¶ 11.)

Plaintiffs maintain that many of their potential trial witnesses reside in Finland. These witnesses include the six inventors of the Tormalla patent as well as many of the personnel involved in the manufacturing of the resorbable screws. (Anderson Decl. ¶ 8.) Plaintiffs argue that because the actual flight time between Helsinki, Finland and New York is shorter than the flight time between Helsinki, Finland and Northern Indiana, litigating this action in New York would be more convenient for the Plaintiffs. The case law does not support this argument. Bionx's witness located in Finland are already inconvenienced by having to travel thousands of miles from their homes to testify. Indiana is no more inconvenient for these witnesses than New York. *See Centro Group, S.P.A.,* 822 F.Supp. at 1061-62 (European plaintiff was no more inconvenienced by litigating in California than in New York); *accord Ricoh,* 817 F.Supp. 473, 484 (D.N.J.1993) (plaintiff's witnesses from Japan were no more inconvenienced by testifying in Minnesota than in New Jersey). Plaintiffs also argue that many of its sales and marketing personnel work at the Blue Bell facility, and thus travel to New York would be more convenient than travel to the Northern District of Indiana. (Anderson Decl. ¶ 9.) However, Plaintiffs failed to provide this Court with the names of these individuals or any affidavits from these individuals stating that they had knowledge relevant to the issues in this patent infringement action.

*4 On balance, the convenience of the parties weighs in favor of a transfer in that the convenience of Defendant Biomet will be served by a transfer while Plaintiff Bionx Oy and Defendant Lorenz will not be more or less inconvenienced whether the action is litigated in New York or Indiana. This is not a case where transfer merely shifts the inconveniences of litigation from one party to another. Rather, this is a case where transfer would aid one party and not disadvantage its adversary.

With regard to the location of documents, Defendants maintain that most, if not all of Defendants' documents relating to the design, manufacture, and sale of its resorbable screws are located in Indiana. Plaintiffs argue that many of the documents relating to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00460    Document 10-3    Filed 02/09/2007    Page 16 of 20

Not Reported in F.Supp.2d                                                                                                           Page 4
Not Reported in F.Supp.2d, 1999 WL 342306 (S.D.N.Y.)
**(Cite as: 1999 WL 342306 (S.D.N.Y.))**

Tormalla patent are located at the offices of its patent counsel in New York city. (Anderson Decl. ¶ 4.) This argument is unavailing because convenience to counsel is not a consideration in the transfer analysis. See *Centro Group*, S.P.A., 822 F.Supp. at 1060-61. Thus, because defendants' documents are located in Indiana, this factor weigh in favor of transfer. See *January Enterprises Inc. v. Buena Vista Television*, 41 U.S.P.Q.2d 1959, 1959 (S.D.N.Y.1997) (Owen J.); *Matra et Manurhin v. International Armament Co.*, 628 F.Supp. 1532, 1534 (S.D.N.Y.1986) (transferring action from New York to Virginia because defendants' documents were located in Virginia); *Coloplast*, 25 U.S.P.Q.2d at 1551 (transferring patent infringement action to Georgia when all of defendant's business records pertaining to design, manufacture, and sale of its products are located in Georgia).

Plaintiffs argue that their choice of forum is entitled to deference. Although this is generally true, plaintiff's choice of forum is given reduced emphasis where, as here, the operative facts upon which the litigation is brought bear little material connection to the chosen forum. *Nieves*, 700 F.Supp. at 772. This action involves a claim for patent infringement under 35 U.S.C. § 1 et seq. The issues relating to Biomet's and Lorenz' alleged infringement of the Tormalla patent concern the design, development, and production of the resorbable screws. See 35 U.S.C. § 271 (listing activities constituting infringement). In this action, the events that gave rise to Plaintiffs' claims occurred in Indiana. The Lactosorb screws were developed and manufactured in Indiana. The individuals involved in the creation and manufacture of the screws live and work in Indiana. All of the material transactions in this action occurred in Finland or Indiana. None occurred in New York. See *Coloplast*, 25 U.S.P.Q.2d at 1550 (transferring patent infringement action when operative events such as alleged infringement, manufacture and sale occurred in Georgia); *Nieves*, 700 F.Supp. at 772 (applying center of gravity of the transaction test to transfer action to Puerto Rico where the underlying events occurred).

In response, Plaintiffs argue that the sale of Defendants' screws in New York favors litigating the action in New York. However, courts have consistently found that where defendants' products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override the other factors favoring transfer. See *Coloplast*, 25 U.S.P.Q.2d at 1551 (fact that 1.02% of defendant's total sales were shipped to New York insufficient to deny transfer); *Matra*, 628 F.Supp. at 1536 (same); accord *Ricoh Co. v. Honeywell, Inc.*, 817 F.Supp. 473, 482 (D. New Jersey 1993) (transferring patent infringement action although limited sales activity in original forum because design, research, development and marketing occurred in transferee forum). Similarly, in this action, only 4.5% of Biomet's national sales are from New York, and the design, research, development, and marketing of the Lactosorb screws occurred in Indiana.

*5 The availability of process to compel the testimony of important witnesses is another important consideration in motions to transfer. *Nieves*, 700 F.Supp. at 772; *Arrow*, 724 F.Supp. at 266. In this action, two former Biomet employees who are knowledgeable about the development and manufacture of Lactosorb screws are located in Indiana. (Blaschke Decl. ¶ 11.) These individuals have signed declarations that indicate that they may not be able to testify were the action to be litigated in New York.

With regard to the relative resources of the parties, Bionx argues that transfer is appropriate because Biomet has greater resources than Bionx. Although courts may consider the relative means of the parties, this factor is not entitled to great weight when both parties are corporations. See *Toy Biz, Inc. v. Centuri Corp.*, 990 F.Supp. 328, 331 (S.D.N.Y.1998) (Baer J.) In this action, Bionx, Bionx Oy, Biomet, and Lorenz are all corporations. Thus, this factor does not outweigh the other factors favoring transfer.

As to this the forum's familiarity with the governing law, because patent law is federal law, any district court may handle a patent case with equal skill. Thus, this factor does not weigh in favor of Indiana or New York. See *Recoton Corp. v. Allsop, Inc.*, 999 F.Supp. 574, 577 (S.D.N.Y.1998).

The final factor, trial efficiency and the interest of justice also favors transfer. Biomet maintains its principal place of business in Indiana, and has designed,

Case 1:07-cv-00460   Document 10-3   Filed 02/09/2007   Page 17 of 20

Not Reported in F.Supp.2d                                                                                                 Page 5
Not Reported in F.Supp.2d, 1999 WL 342306 (S.D.N.Y.)
**(Cite as: 1999 WL 342306 (S.D.N.Y.))**

developed, manufactured, and marketed its resorbable screws in Indiana. Because Biomet conducts business in Indiana and because most of the alleged culpable conduct took place there, Indiana has a strong public interest in adjudicating this dispute. *See Ricoh,* 817 F.Supp. at 485. Additionally, because this action has not been on this Court's docket for very long, little judicial effort will go to waste by transferring it to a forum unfamiliar with it. *See Kondrath v. Arum,* 881 F.Supp. 925, 930 (D.Del.1995). Thus, the interest of justice and trial efficiency favor transferring this action to the Northern District of Indiana.

Conclusion

For the above reasons, Defendants' motion to transfer this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) is granted. The Clerk of the Court is directed to transfer this action to the Northern District of Illinois.

SO ORDERED:

Not Reported in F.Supp.2d, 1999 WL 342306 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:99cv00740 (Docket) (Feb. 01, 1999)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

Westlaw.
Slip Copy                                                                                                    Page 1
Slip Copy, 2006 WL 3469599 (E.D.Wis.)
(Cite as: 2006 WL 3469599 (E.D.Wis.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Wisconsin.
BAY INDUSTRIES, INC., Plaintiff,
v.
TRU-ARX MANUFACTURING, LLC, Defendant.
**No. 06-C-1010.**

Nov. 29, 2006.

David G. Hanson, Paul J. Stockhausen, Reinhart Boerner Van Deuren SC, Milwaukee, WI, Thomas D. Wilhelm, Wilhelm Law Office, Appleton, WI, for Plaintiff.

George Burnett, Liebmann Conway Olejniczak & Jerry SC, Green Bay, WI, for Defendant.

**ORDER GRANTING MOTION FOR MORE DEFINITE STATEMENT**
WILLIAM C. GRIESBACH, District Judge.

*1 Plaintiff Bay Industries, Inc. ("Bay") filed a complaint against defendant Tru-Arx Manufacturing, LLC, ("Tru-Arx"), seeking injunctive relief and damages in connection with alleged patent infringement. In response, Tru-Arx filed a motion for a more definite statement, which, for the following reasons, will be granted.

**BACKGROUND**
Plaintiff Bay is a Wisconsin corporation and owner by assignment of United States Patent No. 7,111,433 B2 ("the '433 patent"), which issued on September 26, 2006. The patent pertains to metal cladding used in construction to cover door jambs and mullions. Plaintiff alleges that defendant Tru-Arx, also a Wisconsin corporation, is infringing at least 20 claims of the '433 patent (Compl.¶ 13) as follows: "On information and belief, Tru-Arx sells extruded aluminum cladding for entry door frames and garage door frames of various sizes and configurations. Certain of these products are at issue in this case (the 'Infringing Products')." (Id. ¶ 9). No other statement in the complaint refers directly to Tru-Arx's products, and none of the allegedly infringing products are specifically identified. Concerned with the lack of specificity in the complaint, defendant's counsel contacted plaintiff's counsel and requested that plaintiff voluntarily amend its complaint to identify the specific products alleged to infringe its patent. (Def.'s Br., Ex. A, Burnett Declaration ¶ 1; Def.'s Br. at 2.) After plaintiff declined to amend the complaint (id.), defendant filed the instant motion.

**ANALYSIS**
Rule 12(e) allows a party to move for a more definite statement "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading...." Fed.R.Civ.P. 12(e). This rule can be viewed as a complement to Rule 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Together these rules permit the court and the litigants to know, at the pleading stage, who is being sued and the grounds for same, thereby facilitating the just, speedy, and inexpensive determination of the action. See McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir.1996); Fed.R.Civ.P. 1.

The decision to grant a motion for a more definite statement is left to the discretion of the court, as is the level of specificity the court may require if the motion is granted. Hartman Elec. Mfg. Co. v. Prime Mfg. Co., 9 F.R.D. 510, 512 (E.D.Wis.1949); McHenry, 84 F.3d at 1179. In patent infringement cases, courts have found Rule 12(e) relief appropriate where the complaint fails to identify any allegedly infringing product or at least set forth a limiting parameter. See, e.g., In re Papst Licensing GmbH Patent Litig., No. 99-3118, 2001 WL 179926, at *2 (E.D.La. Feb. 22, 2001) (requiring plaintiff to amend complaint to identify specifically which of defendant's products allegedly infringed plaintiff's patents); Agilent Techs., Inc. v. Micromuse, Inc., No. 04 Civ. 3090(RWS), 2004 WL 2346152, at *5-6 (S.D.N.Y. Oct. 19, 2004) (granting motion for more definite statement where complaint merely stated the infringement arose from alleged fact that defendant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"makes, sells, or offers products for sale ... that infringe Agilent's patents").

*2 In support of its argument that its complaint meets the liberal pleading requirements of Rule 8(a), plaintiff cites its belief that one of its former employees, now employed by defendant, oversees the allegedly infringing activity. (Pl.'s Resp. Br. at 2.) This former employee "likely has full knowledge" of plaintiff's cladding products (Decl. of Paul Buntin ¶ 3), and so, in plaintiff's view, defendant should know precisely which of its products infringe the '433 patent. However, plaintiff's speculation about a former employee's current work duties or his knowledge of his former employer's product line is not an adequate substitute for meeting the pleading requirements of Rule 8, liberal though they may be. Nor may a plaintiff "make up" for inadequate pleading through discovery that does, eventually, provide defendant the functional equivalent of the required "short and plain statement of the claim." *See, e.g., Eisenach v. Miller-Dwan Med. Ctr., 162 F.R.D. 346, 348-49 (D.Minn.1995)*.

Moreover, by failing to identify any allegedly infringing product or to set forth a limiting parameter, plaintiff in effect is requiring defendant to compare its approximately 40 products to at least 20 claims of the '433 patent in order to formulate a response. I find this to be an unreasonable burden on defendant, especially in light of the fact that in a patent infringement case the plaintiff bears the burden of proof. *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co., 204 F.3d 1360, 1364 (Fed.Cir.2000)*. Defendant should not have to guess which of its products infringe nor guess how its products might fall within plaintiff's interpretation of the claims of the patent.

A more definite statement will also focus the discovery process and expedite the case in an economical manner. Without a more definite statement of the complaint, plaintiff may seek discovery of Tru-Arx's entire line of products, which will engender controversies over the proper boundaries of discovery. Such controversies will impose unnecessary costs on the parties and, most likely, on the court, which will be called upon to resolve them.

Finally, requiring that plaintiff identify the product or products that allegedly infringe its patent insures that plaintiff has a proper basis for bringing suit in the first place. In filing a complaint in federal court, an attorney is representing to the court that a reasonable inquiry has been made to insure that the factual allegations have evidentiary support. Fed.R.Civ.P. 11(b)(3). This certification is an important way of insuring that defendants are not forced to incur the costs of federal litigation in defense of frivolous claims. Given the high costs of patent litigation, certification is particularly important in a case such as this. If a plaintiff cannot describe with some specificity the product he claims infringes his patent, there is reason to question whether such a certification is true. *See Judin v. U.S., 110 F.3d 780, 784 (Fed.Cir.1997)* (holding that plaintiff's failure to obtain, or attempt to obtain, a sample of the accused device so that its actual design and functioning could be compared with the claims of the patent warranted Rule 11 sanctions). Assuming plaintiff has properly investigated his claim before filing suit, there is no reason not to inform the defendant precisely which products are at issue. For this reason, as well, defendant's motion should be granted.

*3 **IT IS THEREFORE ORDERED** that plaintiff's motion for a more definite statement is granted.

**IT IS FURTHER ORDERED** that within 10 days of the date of this Order, plaintiff shall serve and file an amended complaint that identifies which of defendant's products allegedly infringe the '433 patent.

Slip Copy, 2006 WL 3469599 (E.D.Wis.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 3911290 (Trial Pleading) First Amended Complaint (Dec. 11, 2006)

• 2006 WL 2985244 (Trial Pleading) Complaint (Sep. 26, 2006)Original Image of this Document (PDF)

• 1:06cv01010 (Docket) (Sep. 26, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.