IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMEBASE PTY LTD., ) | |
| ) | Case No. 07 C 0460 |
| Plaintiff, ) | |
| ) | Honorable George W. Lindberg |
| vs. ) | |
| ) | |
| THE THOMSON CORPORATION, ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. | |

**TIMEBASE'S RESPONSE TO THE THOMSON CORPORATION'S MOTION TO TRANSFER**

**I.     Thomson is An Alien Corporation and a Proper Defendant**

TimeBase did not sue companies located in Minnesota. TimeBase sued The Thomson Corporation, which is an alien corporation, created under the laws of Canada. (Complaint, ¶ 4). An alien corporation can be sued anywhere. 28 U.S.C. § 1391(d). Its motion for a transfer says in a footnote that the Thompson Corporation is not the proper defendant. (Thomson's Motion, page 2, footnote 1). This comment is unsupported by anything in the motion showing how defendant Thomson Corporation is not liable for the alleged infringement. In fact, it is liable. Defendant Thomson Corporation proudly says that:

> As a result of **our** West business, **we** are the leading supplier in the United States of legal information-based products and services.

(The Thomson Corporation Annual Information Form for the Year Ended December 31, 2005, Exhibit 1, page 8, emphasis added).

The same document identifies eighteen brands owned by Thomson, and then says:

> **We** provide legal and regulatory solutions to virtually every large law firm, significant government institution and law school in the United States and to small and medium-sized law firms and corporate in-house legal professionals. Our information in-

1

cludes case law, statutes, administrative material, law reviews and treatises, lawyer profiles, legal commentary, news, public records and legal forms, in electronic and print formats. Our North American Legal businesses offered our customers the information they need from over 28,000 databases as of December 31, 2005.

(Annual Information Form, Exhibit 1, page 8, emphasis added). The Thomson Corporation owns 100% of twenty-six subsidiaries, including the entities identified in its motion. (Exhibit 1, page 3). Thomson has groups. The "North American Legal" group includes several Thomson "brands": Westlaw, Findlaw, Elite, and Carswell. (Exhibit 2, page 2).

The Thomson Corporation is undoubtedly a proper defendant. It owns everything lock, stock and barrel. It runs the show, and the transfer motion offers no reason to believe otherwise. Venue is unquestionably proper here, and the right party – an alien corporation – was named as defendant.

II.     **There Are Witnesses in the Northern District of Illinois Who Are Knowledgeable About Infringement**

The products involved in this suit are offered and used over the internet. (Annual Information Form, Exhibit 1, page 11). That means that the infringing products are available in this district. (Complaint, ¶ 5). Thomson's motion agrees; it says that sales occur throughout the United States. (Motion, page 7, and see ¶¶ 4 and 5 of the Declaration of Andrew Martens).

Illinois is one of the states that is included in Thomson's PastStat Locator product. (Exhibits 3 and 4, copies of pages from the internet and Declaration of Joseph N. Hosteny, respectively). Minnesota is not included in PastStat. (Exhibits 3 and 4, copies of pages from the internet and Hosteny Declaration). All three products -- PastStat Locator, Graphical Statutes, and RegulationsPlus -- are offered over the internet in Illinois. (Exhibits 3 and 4). Analysis of infringement in this case certainly cannot be hurt by having the case resolved in a court intimately familiar with Illinois law, and such familiarity will probably help. See, e.g., *Riddell, Inc. v. Impact Protective Equipment LLC*, 2003 U.S. Dist. Lexis 13053, *15 (N.D. Ill. July 25, 2003)

(court's familiarity with applicable law is one factor in determining the interests of justice under § 1404(a)).

Of course, one of the acts of infringement under 35 U.S.C. § 271(a) is selling an infringing product. Another infringing act is use. While discovery about the design of a product may well lead to proof of infringement, designing is not itself an act of infringement under § 271. Infringing acts -- selling and using -- are occurring in Illinois. (Exhibits 3 and 4). Thomson says that it has a sales and training office right here, in Chicago:

> Westlaw business activities in Illinois are primarily limited to its sales and account management activities managed from offices in Deerfield and Chicago, Illinois. **The Illinois offices, which employ about 58 people, provide regional support to sales representatives in the Midwest, office space for sales representatives and account managers, and a *customer training facility.***

(See ¶ 18, Martens Declaration). Thus, use and sale -- two separate acts of infringement -- occur here, in the Northern District of Illinois. And, because the unidentified "58 people" include those who run the training facility and teach customers, there are witnesses in this district to those acts of infringement. Thomson claims that none of these persons has "substantial knowledge related to this case." (Martens Declaration, ¶ 19). That makes no sense in light of the job descriptions: sales and training. Those unidentified witnesses sell the products, and train others in how to use them. A training facility and its teaching materials and aids may well be an ideal way to show how the accused products work.

Because acts of infringement do occur in this district, TimeBase's choice of forum is entitled to weight. The first case cited by Thomson on this issue is *Houck v. TWA, Inc.*, 947 F.Supp. 373 (N.D. Ill. 1996). But that case supports TimeBase. *Houck* involved the explosion of TWA Flight 800 over Long Island, New York. The plaintiff (and the deceased person whose estate she represented) were residents of Oregon. 947 F.Supp. at 374-75. The court transferred "because the conduct and events did not occur in this district." 947 F.Supp. at 375. Here, the Martens

3

Declaration, and the motion, confirm that the accused products are sold here, that the products are used here, and that users are trained here.

Another case Thomson cites on the weight to be given the plaintiff's choice of forum is *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F. 3d 665 (5d Cir. 2003). In that case, six Mexican citizens were killed in an auto crash in Mexico. Suit was filed in Texas. The district court dismissed the suit on grounds of forum non conveniens, based on the location of the accident, governing Mexican law, the lack of local interest in Texas, sources of proof and the plaintiffs' home. The decision does not discuss transfer under § 1404(a). Here, there is an injury resulting from acts performed in Illinois.

### III.   Judicial Statistics Do Not Favor Transfer

Thomson says that data from the Northern District of Illinois and the District of Minnesota favor transfer. Thomson, however, is shaping the data to favor its argument, and ignoring contrary data.

Thomson says that the Northern District of Illinois and the District of Minnesota are equally congested. (Motion, page 12). But other data in Thomson's exhibits show that there is a serious difference between the two districts. The District of Minnesota has almost twice as many civil cases that are more than three years old. It has 936 such cases, while the Northern District of Illinois has far fewer, 500. (See the judicial caseload profiles attached as Exhibit 1 to the Declaration of Chad Drown). Minnesota has twice as many old cases as Illinois.

There is another disturbing aspect to the data: the number of cases older than three years is growing rapidly in Minnesota. The same data show that the percentage of civil cases older than three years in the Northern District of Illinois is about steady, between 5.6 and 7.4 % in the past five years. In Minnesota, however, the percentage of civil cases older than three years has

4

jumped. Between 2001 and 2004, the percentage was from 0.9 to 2.7 %. But, in 2005 the percentage jumped to 14.2 %. In 2006, it jumped again, to 15.2 %. Whatever the reason, the number of old civil cases in Minnesota has sharply increased. That is not the case in Illinois. Thomson says there is a class action in Minnesota that skews the data. So what? Delay is delay. Furthermore, the Northern District of Illinois is no stranger to class actions.

Another measure of congestion which Thomson ignores is the number of cases each judge receives in a year. By this measure, too, Minnesota is worse than Illinois. The civil filings per judgeship have averaged 642 per year per judge in Minnesota. In Illinois, the same statistic is much better: 421 per judge per year over the same time. (Exhibit 1 to the Drown Declaration).

Thomson's data show that Illinois is preferable.

### IV.     Thomson's List of Witnesses is Questionable

Thomson does not identify the most knowledgeable witnesses. TimeBase negotiated with Thomson regarding a license of the TimeBase patent. Thomson was represented by Tom Trenker, Kevin Ritchey, John Lindstrom, David Dabney, Forrest Rhoads, Bruce Atkinson, and Reed Meyer. (Exhibit 5, Declaration of Leonie Muldoon). One can presume that these individuals were selected by Thomson to negotiate with TimeBase because they had responsibility for the Thomson products accused of infringement, PastStat, Regulations Plus and Graphical Statutes. Thus, they are all potential witnesses; they know about the products, and they communicated with TimeBase. They are especially pertinent if Thomson set about deliberately copying TimeBase's invention.

Yet not one of these seven persons is identified in the Martens Declaration. Instead, he identifies eighteen <u>different</u> persons. The group of individuals who actually dealt with TimeBase, and who were privy to its knowledge, are not mentioned. Thomson's witness list is suspect.

The list of witnesses appears bloated as well. Any movant on a transfer motion can easily inflate the number of allegedly pertinent witnesses. And the sheer number of witnesses is not decisive. See *Riddell, Inc*, 2003 U.S. Dist. Lexis, at *17 (number of witnesses alone does not accurately gauge the full extent of the witness convenience factor, citing *Bally Mfg. Corp. v. Kane*, 698 F.Supp. 734, 738 (N.D. Ill. 1988); *Central States Pension Fund v. Lewis & Michael, Inc.*, 992 F.Supp. 1046, 1048 (N.D. Ill. 1998) (fact that witnesses are beyond compulsory process does not favor transfer where there is no evidence the witnesses are hostile or uncooperative). For example, Richard Brown and John Elstad appear to be editorial managers. And Martens hedges on the location of the persons he names. He says in ¶ 15 that "[t]o the best of my knowledge," all of the persons in his paragraph 14 are in the Minneapolis-St. Paul area. (He says one is in Salt Lake City.) Martens does not identify which of these individuals still is employed by Thomson. Employees could be directed to appear in Chicago. *FUL Inc. v. Unified School District No. 204*, 839 F.Supp. 1307, 1311 (N.D. Ill. 1993). Thomson does not explain why deposition testimony would not be sufficient. It is hard to believe all eighteen witnesses are critical. In these days of video depositions, trial attendance is not critical.

Thomson has not carried its burden, and its motion should be denied.

Respectfully submitted,

/s/ Joseph N. Hosteny
Joseph N. Hosteny
Arthur A. Gasey
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois 60602
Telephone: (312) 236-0733
Attorneys for TimeBase Pty Ltd.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **TIMEBASE'S RESPONSE TO THE THOMSON CORPORATION'S MOTION TO TRANSFER** was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following at their email address on file with the Court on February 26, 2007.

### ATTORNEYS FOR THOMSON

Barry F. Irwin, P.C.
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601
Phone: 312-861-2000
Fax: 312-861-2200
birwin@kirkland.com

*By Facsimile and First Class Mail*

David J.F. Gross
Calvin L. Litsey
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Phone: 612-766-7000
Fax: 612-766-1600
dgross@faegre.com
clitsey@faegre.com

/s/Joseph N. Hosteny